STATE OF CONNECTICUT *v.* DAVID MORELAND
(7621)

DALY, O'CONNELL and CRETELLA, Js.

Argued September 27—decision released November 13, 1990

*William Holden,* public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Linda N. Howe,* assistant state's attorney, for the appellee (state).

CRETELLA, J. The defendant was charged with one count of possession of cocaine with intent to sell in violation of General Statutes § 21a-277 (a). After the trial court denied his motion to suppress any narcotic substances that were seized during a search of his jacket at police headquarters, he pleaded nolo contendere pursuant to General Statutes § 54-94a. The defendant appeals from the trial court's denial of his motion to suppress, and claims that the evidence seized was the fruit of an unreasonable seizure. We affirm the trial court's determination.

On February 4, 1987, Jesus Oritz, Jr., and Philomena Lula, of the Bridgeport police department, were in the process of transporting a drug offense suspect from Father Panik Village, where they had just apprehended him, to the police station for booking. As they were proceeding through Father Panik Village, the officers observed the defendant and another young male, later identified as Jose Colon, approach a white male seated in a blue automobile and carry on a three way conversation. The defendant had money in his hand and was about three feet from the blue car. Colon stood by the driver's window. From what they observed, the officers became suspicious, stopped their car, and started to get out. When the defendant saw the officers he waved to Colon, who immediately dashed away.

Colon ran in front of the blue car toward building 17. He was pursued and apprehended by Ortiz. The defendant was detained by Lula. The officers then conducted an investigation and checked the area where the defendant and Colon had been standing, and the route

that Colon had taken toward building 17. They located a quantity of narcotics on the ground in front of the blue car. Lula then patted the defendant down to check for weapons and arrested him for attempted sale of narcotics. The defendant was then handcuffed and transported to the police station where his jacket was searched incident to his custodial arrest. Pink glassine envelopes containing a white powdery substance, later identified as cocaine, were seized from a rip inside the lining of the defendant's jacket. The defendant was then charged with possession of a narcotic substance with the intent to sell.

The defendant filed a motion to suppress the narcotic substance that was found in his jacket at police headquarters. When the court denied this motion, he entered a plea of nolo contendere conditioned upon the outcome of this appeal.

Because the defendant contests the validity of the search of his jacket, we must first review the validity of the defendant's detention and the arrest that led to the search in question.

An officer may momentarily detain a person for investigative purposes if he has a reasonable and articulable suspicion that that person has committed or is about to commit a crime. *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State* v. *Edwards,* 214 Conn. 57, 71, 570 A.2d 193 (1990). Whether there is a reasonable and articulable suspicion depends on the totality of the circumstances. *State* v. *Aillon,* 202 Conn. 385, 399, 521 A.2d 555 (1987). The character of the neighborhood and the officer's knowledge of narcotics distributions in the area may properly be considered. *State* v. *Rodriguez,* 14 Conn. App. 574, 578, 542 A.2d 342 (1988). In reviewing the offi-

cers' actions, we must first determine whether the stop was justified at its inception. *Terry* v. *Ohio,* supra, 19–20; *State* v. *Aillon,* supra.

The area where the defendant was apprehended was known to the officers to be a drug trafficking area. From their experience in the field of narcotics investigations and arrests, their suspicions were aroused by the defendant's open display of money, and the conversation they observed between the defendant, Colon and the driver of the blue car. This activity, combined with the defendant's wave to Colon and Colon's hasty departure from the scene as soon as the officers stopped their vehicle and began to get out, gave the officers a reasonable and articulable suspicion that criminal activity was occurring, and warranted the detention of the defendant by Lula to inquire about any possible narcotics activity while Ortiz pursued Colon.

"A *Terry* stop that is justified at its inception will pass constitutional muster only if the ensuing police investigation is reasonably related to the purposes of the stop." *State* v. *Aillon,* supra, 401. Here, the ensuing investigation was not only related to the purpose of the stop, but lead to the discovery of narcotics in a place Colon had just passed as he ran from the officers. It was this discovery that led to the arrest of the defendant. When the results of an initial stop confirm the officer's suspicions, the scope of the stop may be enlarged. *State* v. *Mitchell,* 204 Conn. 187, 197, 527 A.2d 1168, cert. denied, 484 U.S. 927, 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987).

An officer may arrest a person without a warrant when he has reasonable grounds to believe that person has committed or is committing a felony. *State* v. *Penland,* 174 Conn. 153, 155, 384 A.2d 356, cert. denied, 436 U.S. 906, 98 S. Ct. 2237, 56 L. Ed. 2d 404 (1978). Because probable cause entails more than mere

suspicion, there must be facts and circumstances within the officer's knowledge sufficient to justify the reasonable belief that the offense has been committed. Id. In the present case, the officers' investigation that followed the brief detention of the defendant led the officers to the narcotics on the ground in front of the blue car and gave rise to the reasonable belief that a felony was being committed.

We conclude that both the *Terry* stop and the arrest of the defendant were valid. In addition, because the seizure of the narcotics from the defendant's jacket was the result of a search incident to a lawful custodial arrest, it too was valid. *State* v. *Copeland,* 205 Conn. 201, 209, 530 A.2d 603 (1987).

The judgment is affirmed.

In this opinion the other judges concurred.