STATE OF CONNECTICUT *v.* RENWRICK MIEREZ
(9178)

DUPONT, C. J., FOTI and HEIMAN, Js.

---

Argued February 6—decision released May 7, 1991

*Dennis F. O'Toole,* assistant public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Jennifer Sanders,* deputy assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from a judgment of conviction, rendered after a jury trial, of one count of sale of a narcotic substance in violation of General Statutes § 21a-277 (a),[1] and one count of possession of

---

[1] General Statutes § 21a-277 provides in pertinent part: "PENALTY FOR ILLEGAL MANUFACTURE, DISTRIBUTION, SALE, PRESCRIPTION, DISPENSING. (a) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with

a narcotic substance, in violation of General Statutes § 21a-279 (a).[2] In each instance, the narcotic substance involved was cocaine.

The defendant claims that the trial court (1) improperly denied his motion to suppress evidence and (2) improperly charged the jury on the crime of sale of a narcotic substance when the evidence produced by the state was insufficient to prove that crime beyond a reasonable doubt. We disagree with the defendant's claim that the denial of his motion to suppress was improper, but agree that the evidence was insufficient to support a verdict of guilty on the charge of sale of a narcotic substance. We therefore affirm the defendant's conviction of the crime of possession of a narcotic substance, and reverse his conviction of the charge of sale of a narcotic substance.

The jury reasonably could have found the following facts. On August 1, 1989, Detectives Christopher Lyons and Richard Perrotta of the Hartford police department

---

the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marihuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

[2] General Statutes § 21a-279 provides in pertinent part: "PENALTY FOR ILLEGAL POSSESSION. SUBSTITUTION OF MEDICAL TREATMENT FOR CRIMINAL SANCTIONS. (a) Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned.

set up surveillance in the area of 11 Sargeant Street, Hartford, in response to an anonymous tip that a black man in a red shirt was selling drugs at the curb in front of that address. The officers were in an unmarked police vehicle. Lyons and Perrotta observed the defendant, a black male wearing a red shirt, standing on the sidewalk near the curb in front of 11 Sargeant Street. The officers watched the defendant for a period of about fifteen minutes. Two or three times during that period, they saw him stop pedestrians and wave over the driver of a car, have a short conversation with the person he had stopped, and exchange small items with each of these people. The officers were unable to see the items that were being exchanged.

At one point, a white truck occupied by two persons pulled over to the side of the road where the defendant was standing. The driver got out of the truck and approached the defendant. The officers observed the defendant and the man from the truck exchange unidentifiable small items. Once the exchange was completed, the defendant remained in the surveillance area. At this time, Lyons and Perrotta exited their vehicle. Lyons pursued the defendant, while Perrotta approached the driver of the white truck. Lyons was dressed in civilian clothing, but his police badge was clearly visible on a chain around his neck. His service revolver was also visible. As Lyons approached, the defendant began to run down the driveway of 11 Sargeant Street. When Lyons yelled at the defendant to stop, he did. As he stopped, the defendant turned away from Lyons slightly and put his hands in the front waistband of his trousers. Lyons grabbed the defendant, reached into the same area of the defendant's waistband, where the officer found a plastic bag that was tied at the top and contained a white powder. A further search of the defendant revealed that he had a newspaper fold containing a white powder in the small

of his back at his beltline, and $80 in his pocket. The defendant was then placed under arrest.

Meanwhile, Perrotta approached the driver of the white truck, stopping him before he was able to reenter the truck. Perrotta searched the driver, but found no narcotics in his possession. Lyons then called to Perrotta for assistance. When Perrotta responded to his partner's call, the driver and his passenger left the scene in the white truck before Perrotta could obtain the name of the driver or any information about the truck or its owner. Neither the driver of the white truck nor the passenger were ever apprehended by the police. A field test and a full laboratory test were performed on the white powder that had been taken from the defendant. Both of these tests were positive for the narcotic substance, cocaine.

I

The defendant first claims that the court improperly denied his motion to suppress the evidence that was seized from his person at the time of his arrest. The defendant posits that the court improperly concluded, as a matter of law, at the close of the suppression hearing, that the search of his person was justified as a search incident to a lawful arrest. He argues that the police lacked probable cause to believe that he had committed a felony.

The state argues that the police did have the requisite probable cause, and, as an alternative ground to uphold the search, it asserts that the search was a justifiable protective frisk that was conducted pursuant to a valid *Terry* stop. *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). This court can sustain a judgment on a different theory than that adopted by the trial court. *Groton* v. *Commission on Human Rights & Opportunities,* 169 Conn. 89, 101, 362 A.2d 1359 (1975). Thus, we conclude that the search can be

upheld on the alternative ground that it was conducted pursuant to a valid *Terry* stop. See *State* v. *Beckenbach,* 1 Conn. App. 669, 673 n.4, 476 A.2d 591 (1984), rev'd on other grounds, 198 Conn. 43, 501 A.2d 752 (1985).

"It is well established that police may momentarily detain an individual for investigative purposes if the police have 'a "reasonable and articulable" suspicion that [he has] engaged in criminal activity. *Reid* v. *Georgia,* 448 U.S. 438, 440, 100 S. Ct. 2752, 65 L. Ed. 2d 890 (1980); *Terry* v. *Ohio,* [supra].' *State* v. *Carter,* 189 Conn. 611, 617, 458 A.2d 369 (1983). What constitutes a reasonable and articulable suspicion depends on the 'totality of the circumstances.' *United States* v. *Cortez,* 449 U.S. 411, 417, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981). 'The test to be applied, however, is an objective one: "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry* v. *Ohio,* supra, 22. In justifying the particular intrusion "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry* v. *Ohio,* supra, 21; see *United States* v. *Brignoni-Ponce,* [422 U.S. 873, 884, 95 S. Ct. 2574, 45 L. Ed. 2d 607 (1975)]; *State* v. *Watson,* 165 Conn. 577, 585, 345 A.2d 532 (1973).'. . ." *State* v. *Aversa,* 197 Conn. 685, 690–91, 501 A.2d 370 (1985).

In addition, when an officer is investigating an individual at close range whose conduct or suspicious behavior justify a belief by the officer that the suspect is armed and dangerous, the officer may conduct a limited search for weapons. *State* v. *Federici,* 179 Conn. 46, 51, 425 A.2d 916 (1979). The search must be reasonably related in scope to the circumstances that justify it in the first place. *State* v. *Aillon,* 202 Conn. 385,

399, 521 A.2d 555 (1987); *State* v. *Moreland,* 23 Conn. App. 495, 497–98, 582 A.2d 212 (1990).

Our examination of the facts in the present case leads us to conclude that Lyons had the right to stop the defendant because he had a reasonable and articulable suspicion as required by *Terry* v. *Ohio,* supra. Specifically, when the officers arrived at the surveillance site they observed that the defendant was wearing a red shirt, as the anonymous caller had said he would be, and they watched as he exchanged small items with passersby and the driver of the white truck. The officers were aware of the fact that the area was one in which drugs were sold because they had made numerous narcotics arrests in that vicinity in the past. On the basis of the totality of the facts available from the officers' observations, training, and experience, they had a reasonable and articulable suspicion that the defendant was engaged in illegal drug transactions. *State* v. *Aversa,* supra; *State* v. *Wylie,* 10 Conn. App. 683, 686, 525 A.2d 528, cert. denied, 204 Conn. 807, 528 A.2d 1156 (1987). The defendant concedes that at this point Lyons had a right to make an investigative stop, but claims that the reaching into the defendant's waistband by Lyons exceeded the scope of a limited protective search under *Terry.*

The defendant's furtive activity at the initiation of the stop further aroused the officer's suspicion, allowing him to prolong the stop and broaden its scope. When the defendant first ran and then stopped and reached into the waistband of his pants, the police were justified in conducting a pat down search for weapons. "It is by now common knowledge among police officers that sellers of narcotics are frequently armed." *State* v. *Marino,* 17 Conn. App. 677, 683, 555 A.2d 455, cert. denied, 211 Conn. 803, 559 A.2d 1138 (1989). " 'An officer should not be made to choose between his own safety and what could later be construed as an ille-

gal search and seizure.' " *State* v. *Santiago,* 17 Conn. App. 273, 277, 552 A.2d 438 (1989); see also *State* v. *Holder,* 18 Conn. App. 184, 188, 557 A.2d 553 (1989). In the past, we have held, under similar circumstances, that a search such as the one involved here was justified. *State* v. *Escobales,* 16 Conn. App. 272, 275, 547 A.2d 553, cert. denied, 209 Conn. 827, 552 A.2d 434 (1988), cert. denied, 490 U.S. 1023, 109 S. Ct. 1753, 104 L. Ed. 2d 189 (1989). We continue to adhere to the rule of that case and conclude that the officers were justified in frisking the defendant. Thus, the court properly admitted the cocaine that was found at both the front and back of the defendant's waistband, as well as the currency that was found in his pockets. See *State* v. *Moreland,* supra.

Because we have concluded that the search was justified under our cases, we need not address the defendant's claim that the police lacked probable cause to arrest and, thus, could not justify the search as one incident to a lawful arrest.

We conclude that the trial court correctly denied the defendant's motion to suppress evidence.

## II

The defendant next asserts that the trial court incorrectly denied his motion for a judgment of acquittal because the evidence produced by the state was insufficient to prove beyond a reasonable doubt that he sold a narcotic substance. We agree.

The information that was submitted to the jury was specific in that it charged that "on or about August 1, 1989, at approximately 1:40 p.m. at or near 11 Sargeant Street in the city of Hartford, the defendant Renwrick Mierez . . . did sell a narcotic substance, to wit, cocaine, in violation of General Statutes § 21a-277 (a) . . . ." The state alleged no alternative theory of crimi-

nal liability, such as possession of a narcotic substance with intent to sell in violation of § 21a-277 (a). Instead, the state elected to proceed on the very specific allegation of a sale. See *State* v. *Hahn,* 207 Conn. 555, 563–65, 541 A.2d 499 (1988).

When called upon to review a challenge to the sufficiency of the evidence, we are required to apply a two-pronged analysis. We must first review the evidence presented at trial, construing it in a light most favorable to sustaining the jury's verdict. We are then obligated to determine whether, from the facts established and the inferences reasonably drawn therefrom, the jury reasonably could have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Turner,* 24 Conn. App. 264, 267, 587 A.2d 1050 (1991); *State* v. *Dawson,* 23 Conn. App. 720, 722–23, 583 A.2d 1326 (1991).

General Statutes § 21a-240 (50) defines sale, insofar as it applies to illegal drug transactions, as: "any form of delivery which includes barter, exchange or gift, or offer therefor, and each such transaction made by any person whether as principal, proprietor, agent, servant or employee." As we have previously stated, the "sale" of an illegal drug is not limited to an exchange for value, and must encompass some form of delivery. *State* v. *Jackson,* 13 Conn. App. 288, 294, 535 A.2d 1327 (1988). Thus, in order to satisfy its burden of proof, the state was required to prove beyond a reasonable doubt that there was a sale as defined in the statute, and that the delivery was of a narcotic substance, in this case, cocaine. After reviewing the evidence that was presented at trial in the light most favorable to sustaining the verdict, we conclude that the state did not meet its burden.

The officers who engaged in the surveillance of the defendant's activities described the items that they

claimed were given by the defendant to others only as small objects. Likewise, they were unable to give any better description of the items that the defendant received in return. No evidence was offered to show where on his person the defendant obtained the small objects that he allegedly passed. No evidence was produced that he took these objects from the same area in the front of his pants from which the glassine bag was seized, or from the small of his back at the waistband of his trousers where the newspaper fold was located. In short, the state did not produce any evidence to connect the seized narcotics with the activities of the defendant.

A jury may not engage in speculation and conjecture to reach a factual result; *State* v. *Mandrell,* 199 Conn. 146, 154, 506 A.2d 100 (1986); and any inferences that are drawn must be rational and arise out of the evidence that has been presented. *State* v. *Little,* 194 Conn. 665, 673, 485 A.2d 913 (1984). Although proof beyond a reasonable doubt does not require proof beyond a possible doubt; *State* v. *Payne,* 186 Conn. 179, 184, 440 A.2d 280 (1982); it does require that the proof be such as to preclude every reasonable hypothesis except that which it tends to support, and that it be consistent with the defendant's guilt and inconsistent with any other rational conclusion. *State* v. *Morrill,* 193 Conn. 602, 610, 478 A.2d 994 (1984). Further, this obligation of proof beyond a reasonable doubt extends to every essential element of the crime charged. *State* v. *Green,* 194 Conn. 258, 274, 480 A.2d 526, cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985). Absent resort to speculation and conjecture, no evidence was presented in this case from which the jury reasonably could have drawn an inference of delivery of cocaine to another person by the defendant.

The state's reliance on *State* v. *Hall,* 165 Conn. 599, 345 A.2d 17 (1973), and *State* v. *Baskins,* 12 Conn. App.

313, 530 A.2d 663, cert. denied, 205 Conn. 811, 532 A.2d 586 (1987), is misplaced. In *State* v. *Hall,* supra, the police observed the defendant hand something to an undercover officer and receive money in return. The undercover officer brought his purchases to another officer. The items that were purchased were four glassine bags of what proved to be narcotics. On the same day, the surveillance officer again observed a transaction between the defendant and the same undercover officer in which six glassine bags were exchanged for money. These bags also were taken by the police and field tested positive as narcotics. Thus, in *Hall,* two sales were observed by the police and the product of these sales was taken by the police and analyzed immediately after the sale. In *State* v. *Baskins,* supra, the police observed the defendant take money from an individual, who then walked to a different area, picked up a brown paper bag, removed something from the bag, placed the bag back from where he had taken it, walked back to the individual and handed something to the individual. The police observed that the objects that the defendant gave to the individual were two glassine bags. Before the defendant was arrested, the police seized the brown paper bag in which they found ten glassine bags that field tested positive for narcotics. Because the bags that were delivered by the defendant came from this same paper bag, we concluded that the jury could properly draw an inference that the two glassine bags that the defendant had taken from the same brown bag, and delivered to the individual also contained the same narcotic. Id., 316–17.

Here, none of the corroborative facts as found in *Hall* and *Baskins* was present. The officers gave no description of the packaging, and saw no money change hands. The narcotics that were seized did not fit the officer's description of "small objects." In addition, Perrotta's

554

search of the driver of the white truck disclosed that he possessed no narcotics. Although a trier of fact may draw reasonable inferences from the facts that it finds, it may not resort to speculation and conjecture. *State v. Haddad,* 189 Conn. 383, 387–88, 456 A.2d 316 (1983). "Where it cannot be said that the trier of fact could find guilt proved beyond a reasonable doubt, then a conviction cannot stand." *State v. Mandrell,* supra. We conclude that the record does not support a finding of guilt beyond a reasonable doubt of the crime of sale of narcotics.

The judgment is affirmed as to the conviction of possession of narcotics in violation of General Statutes § 21a-279 (a). The judgment is reversed as to the conviction of sale of narcotics in violation of General Statutes § 21a-277 (a) and the case is remanded with direction to render a judgment of acquittal with respect to that count and to resentence the defendant in accord with his other conviction.

In this opinion the other judges concurred.