[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant Orlando Santos has moved to suppress any and all evidence of narcotics found on his person during the course of a warrantless search of his person by a member of the Enfield Police Department late on the night of February 3, 1994. As the result of that search, the defendant is charged with Possession of Cocaine and Possession of Cocaine with Intent to Sell in violation respectively of General Statutes Sections 21a-279(a) and21a-278(b).
At approximately 11:00 p.m. on February 3, 1994 Detectives Hall and Berger of the Enfield Police Department were on patrol in an unmarked police vehicle in the area of an Enfield bar known as "Jiggy's." They had been keeping this bar under surveillance for several weeks as the Department had received information that much of the narcotics activity that had previously been occurring at another Enfield bar had shifted to Jiggy's. Detective Hall was driving and Detective Berger was seated to his right in the front passenger seat. They were proceeding west on Carl Street, which borders the South side of Jiggy's.
As they approached opposite the rear entrance of the bar, they noticed two males standing a few feet from the back door near the rear steps. Illumination consisted at most of a small yellow light by the rear door and some light from the interior provided by the partly open back door. Detective Hall testified that he observed the first male showing to the other an object which Hall believed to be a small glassine baggy. Detective Berger did not see any such object, but did hear Detective Hall exclaim "They're doing a deal." CT Page 8857
The detectives recognized the first male as the defendant Orlando Santos, who they knew had recently [January 13, 1994] been convicted and placed on probation by this Court for violation of General Statutes § 21a-277(a) pursuant to his arrest therefor by Detective Hall the previous September. Hall had received information from various sources that the defendant was now selling cocaine at Jiggy's.
The detectives drove past the two males, parked out of their view near the main entrance to the bar, exited the vehicle, and began on foot to approach the defendant and the other male, who was later identified as Frank Tammaro. As they approached, they observed the two males exchange something. As they got closer, they saw the defendant look at them. The defendant appeared startled and seemed to recognize them. The defendant then quickly stuffed his hands into his pockets and turned his back toward them. He said something to Tammaro, who quickly pulled something out of his right front pants pocket and threw it on the ground.
Based on their independent observations of the incident as they approached, Hall and Berger suspected that they had just interrupted a drug transaction. They then detained the defendant and Tammaro by having them place their hands on their heads and kneel upon the ground. They then notified dispatch of the situation and requested assistance. Sergeant Stevens was dispatched and arrived approximately four minutes later.
While awaiting the arrival of Sergeant Stevens, Detective Berger unsuccessfully searched the area for the item that he had seen Tammaro throw away, and Detective Hall checked the defendant. Hall first patted down the defendant for weapons and found none. Hall then searched the defendant's front pants pockets, because, based on the defendant's actions upon the detectives' approach, Hall believed that the defendant had secreted narcotics there. In the defendant's left front pants pocket Hall found a rolled up napkin. Hall considered this important because he remembered that when he had arrested the defendant in September 1993, the defendant had concealed his cocaine in a rolled up napkin. Hall then searched the defendant's right front pants pocket, where he found a small glassine CT Page 8858 baggy, containing a small yellow/white rock like substance. The substance's packaging and appearance were similar to that of "crack" cocaine.
Hall field tested a small portion of this yellow/white substance which tested positive for the presence of cocaine. Hall then returned to the defendant and placed him under arrest for Possession of Cocaine. Tammaro also was searched, but, because no contraband was found, he was released. The defendant, however, was at this time transported to the Enfield Police Station. He was strip-searched there, but no additional narcotics were uncovered.
In support of his motion, the defendant asserts that suppression is mandated because the subject search of his person exceeded the permissible scope of an investigative "stop and frisk" — the so-called "Terry Stop" — under the rule of Terry v. Ohio, 392 U.S. 1 (1968) and its progeny, and is violative of Connecticut law. The Court concurs.
It is axiomatic that, subject only to a few well defined exceptions, a search conducted without a warrant issued upon probable cause is per se unreasonable. Statev. Badgett, 200 Conn. 412, 423-24, cert. denied, 479 U.S. 940
(1986). It is well established, however, that thefourth amendment to the United States constitution allows a police officer to stop and detain an individual briefly for investigative purposes if the officer has a reasonable and articulable suspicion that the individual is engaged in criminal activity. State v. Cofield, 220 Conn. 38, 44
(1991).
Whether an officer has a reasonable and articulable suspicion that criminal activity is afoot "depends on the totality of the circumstances. The test to be applied, however, is an objective one: would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate. In justifying the particular intrusion the police officer must be able to point to specific and articulable facts which taken together with rational inferences from those facts, reasonably warrant the intrusion." (Citations omitted; internal quotation marks omitted.) State v. Mierez, 24 Conn. App. 543, 548
CT Page 8859 (1991).
The Court finds that Detectives Hall and Berger had, based on their experience, training and knowledge, as well as on their specific observations on the night of February 3, 1994, a "reasonable and articulable suspicion" that the defendant was engaged in an illegal drug transaction. Accordingly, their action in stopping and detaining the defendant was reasonable under Connecticut law. Detective Hall's subsequent search of the defendant's person, however, stands on a different footing.
Where an officer has reasonable grounds to believe that a defendant is engaged in the sale of illegal drugs, he may properly conduct a "pat-down search for weapons." State v.Holder, 18 Conn. App. 184, 188 (1989). "It is by now common knowledge among police officers that sellers of narcotics are frequently armed." State v. Marino, 17 Conn. App. 677,683 (1989).
The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence. Adams v. Williams,407 U.S. 143, 145-46 (1972). Such searches are not designed to prevent the destruction of evidence. Michiganv. Long, 463 U.S. 1032, 1050 n. 14 (1983). It is impermissible for an officer to go beyond a limited search for weapons. Sibron v. New York, 392 U.S. 40 (1968).
Detective Hall first parted down the defendant for weapons. That pat down did not detect either the presence of any weapon or the presence of contraband. It was only then that Hall commenced his specific search of the defendant's person for the presence of narcotics. This search was not permitted. State v. Marsala, 15 Conn. App. 519,524 (1988). State v. Mierez, supra, which this case factually resembles, is distinguishable in that in Mierez, unlike this case, the pat down for weapons disclosed the presence of contraband.
Perhaps in recognition that the subject search exceeded the scope of that authorized during a Terry stop, the State seeks to justify the search under a number of other exceptions. These include a search incident to a lawful arrest, exigent circumstances and inevitable discovery. CT Page 8860 The State has failed to satisfy its burden of proof by the fair preponderance of the evidence that any of these exceptions apply.
Evidence obtained as a result of a valid search and seizure incident to a lawful arrest is not illegally obtained and is therefore admissible. Chimel v.California, 395 U.S. 752, 763 (1969). General Statutes § 54-1f(b) authorizes a police officer to arrest without a warrant "any person who the officer has reasonable grounds to believe has committed or is committing a felony." The term "reasonable grounds" has been interpreted to mean "probable cause." State v. Dennis, 189 Conn. 429, 431
(1983).
"Probable cause means more than mere suspicion. There must be facts and circumstances within the officer's knowledge and of which he has trustworthy information, sufficient to justify the belief of a reasonable person that an offense has been or is being committed." State v.Gant, 231 Conn. 43, 63 (1994).
Detective Hall candidly admitted that he did not have probable cause to arrest the defendant at the time he detained him. Taking Hall's testimony in its most favorable light, at the very best all he observed was the defendant showing something to and later exchanging something with Tammaro, and Tammaro making a motion as if he were throwing something away. This does not rise to the level of probable cause. It was only after he made the subject search of the defendant, following detention and pat down, that he uncovered the half ounce of rock cocaine that gave rise to probable cause for the subsequent arrest.
The "exigent circumstances" exception applies in a situation where there is a risk of danger to the officers involved, bystanders or the public, and generally involves weapons. State v. Gant, supra, at 231 Conn. 67. Detective Hall did pat down the defendant for weapons and found none. No emergency existed.
The "inevitable discovery" exception applies where the evidence would have been ultimately discovered by lawful means, and that the lawful means which made discovery inevitable were possessed by the police and were being CT Page 8861 actively pursued prior to the occurrence of the constitutional violation. State v. Badgett, supra, at200 Conn. 443. In this case, the evidence was in the defendant's pants pocket. It was neither in plain view nor discoverable by the lawful pat down.
The motion to suppress is granted.
David L. Fineberg Judge of the Superior Court