## STATE OF CONNECTICUT *v.* ANTHONY HICKS
## (AC 17854)

Lavery, Hennessy and Vertefeuille, Js.

Argued October 27, 1999—officially released January 18, 2000

*Michael A. D'Onofrio*, special public defender, for the appellant (defendant).

*Margaret Gaffney Radionovas*, assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Brian Preleski*, assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant, Anthony Hicks, appeals from the judgment of conviction, rendered after a jury trial, of sale of a narcotic substance in violation of General Statutes § 21a-277 (a).[1] The defendant claims that (1) the evidence was insufficient to support his conviction and (2) the prosecutor committed misconduct during closing argument. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of December 12, 1995, the Connecticut state police statewide narcotics task force coordinated a plan with the Bristol police department to purchase crack cocaine from the defendant. Detective Matthew Barnwell of the task force telephoned the defendant at a number listed in the defendant's name. A male whose voice Barnwell did not recognize answered the telephone. Barnwell asked if he could purchase crack cocaine and was told, "No problem, come on by." Barnwell drove to the defendant's residence and wore a body wire so that officers assisting him could hear Barnwell.

Barnwell knocked on the door, and a Hispanic female let him into the apartment. Inside, Barnwell observed

---

[1] General Statutes § 21a-277 provides in relevant part: "Penalty for illegal manufacture, distribution, sale, prescription, dispensing. (a) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned. . . ."

the defendant sitting on a couch using a telephone. Barnwell acknowledged the defendant, who responded, "Huh," and made a hand signal. The defendant motioned to the female, who then went to a coffee table in front of the defendant, opened the table's doors and removed a plastic bag containing small plastic bags with a white, rock-like substance inside. The female then handed the bag to the defendant. The defendant, in turn, removed two of the smaller bags containing the white, rock-like substance and gave them to Barnwell. Barnwell then paid the defendant $100. Officers at the scene field tested the substance, which showed a positive result for the presence of cocaine.

I

The defendant claims that there was insufficient evidence to establish beyond a reasonable doubt that he transferred and sold crack cocaine to the undercover detective in violation of § 21a-277 (a). We disagree.

The defendant acknowledges that he failed to preserve his claim of evidentiary insufficiency but, as an alternative to proper preservation, requests review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[2] "Our Supreme Court, following the dictate of the United States Supreme Court in *Jackson* v. *Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979),

---

[2] "In *State* v. *Golding*, [supra, 213 Conn. 239–40] . . . [our Supreme Court] stated that a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . [The court] noted that [it] would remain free to dispose of the claim by focusing on whichever condition is most relevant in the particular circumstances." (Citations omitted; internal quotation marks omitted.) *State* v. *Watlington*, 216 Conn. 188, 192, 579 A.2d 490 (1990).

has held that 'any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of *Golding*.' *State* v. *Adams*, 225 Conn. 270, 276 n.3, 623 A.2d 42 (1993)." *State* v. *Patterson*, 35 Conn. App. 405, 411 n.7, 646 A.2d 258, cert. denied, 231 Conn. 930, 649 A.2d 254 (1994). Accordingly, we conclude that no practical reason exists to engage in a *Golding* analysis of a sufficiency of the evidence claim and, thus, review this challenge as we do any other properly preserved claim. See id.

General Statutes § 21a-240 (50) defines sale, insofar as it applies to illegal drug transactions, as "any form of delivery which includes barter, exchange or gift, or offer therefor, and each such transaction made by any person whether as principal, proprietor, agent, servant or employee . . . ." The definition of sale is quite broad and intended to encompass a variety of situations. See *State* v. *Avila*, 166 Conn. 569, 580 n.1, 353 A.2d 776 (1974).

The defendant relies on *State* v. *Mierez*, 24 Conn. App. 543, 550–54, 590 A.2d 469, cert. denied, 219 Conn. 910, 593 A.2d 136 (1991), in which this court held that the evidence presented was insufficient to sustain a conviction because of the lack of evidence of a sale or transmission of narcotics by the defendant. In *Mierez*, the defendant was observed by police performing what appeared to be narcotics transactions on a sidewalk curb. Id., 546. Two or three times, the defendant was observed approaching stopped cars and exchanging unidentifiable small items with the drivers. Id. Police apprehended the defendant and found a white powder later determined to be narcotics in his possession. Id., 546–47.

This court overturned the conviction, stating that "[t]he officers who engaged in the surveillance of the defendant's activities described the items that they

claimed were given by the defendant to others only as small objects. Likewise, they were unable to give any better description of the items that the defendant received in return. No evidence was offered to show where on his person the defendant obtained the small objects that he allegedly passed. No evidence was produced that he took these objects from the same area in the front of his pants from which the glassine bag was seized, or from the small of his back at the waistband of his trousers where the newspaper fold was located. In short, the state did not produce any evidence to connect the seized narcotics with the activities of the defendant." Id., 551–52.

Similarly, in *State* v. *Arbelo*, 37 Conn. App. 156, 655 A.2d 263 (1995), we overturned a conviction because of the absence of evidence of a drug sale. "The weakness in the state's case here is that no state's witness saw money pass from [the purported purchaser] to the defendant, nor did any state's witness see any drugs pass from the defendant to [the purported purchaser]. Additionally, there is a paucity of circumstantial evidence supporting the state's theory that the brief contact between the defendant and [the purported purchaser] resulted in a drug sale." Id., 160; see *State* v. *Davis*, 38 Conn. App. 621, 625–29, 662 A.2d 812, cert. denied, 235 Conn. 919, 665 A.2d 907 (1995) (primary flaw in state's case was that it offered no witnesses who actually saw drugs pass between alleged buyer and seller).

Significant differences exist between the facts in *Mierez* and its progeny and the present case. In *Mierez*, *Arbelo* and *Davis*, no witnesses existed who actually viewed the transmission of narcotics between one party and another. In contrast, not only did Barnwell witness the entire transaction, but he was the undercover buyer who actually purchased the narcotics. Barnwell viewed exactly what was being passed to him during the trans-

action, which was shown to be narcotics through various laboratory tests. See *State* v. *Hall*, 165 Conn. 599, 601–602, 345 A.2d 17 (1973) (defendant handed narcotics directly to undercover police officer).

We agree with the state that sufficient evidence exists ·to support the defendant's conviction. The jury reasonably could have found that the defendant's motions to the female in the room combined with her response could constitute a nonverbal command to retrieve narcotics from the coffee table. There is sufficient evidence to conclude that the female removed the drugs from the table and gave them to the defendant, who then gave them directly to the undercover detective in exchange for money. Barnwell testified that he had absolutely no doubt that it was the defendant who consummated the drug transaction. These facts and their supporting reasonable inferences constitute sufficient evidence that reasonably could lead a jury to conclude that the defendant sold the crack cocaine to Barnwell, thus meeting the requirements of § 21a-277 (a).

## II

The defendant contends that the state improperly commented on the credibility of witnesses and his failure to testify such that he was deprived of his fundamental right to a fair trial pursuant to the fifth and fourteenth amendments to the United States constitution and article first, § 8, of the constitution of Connecticut. We are not persuaded.

Before we address the defendant's contentions, we note that these claims of prosecutorial misconduct were not preserved at trial. Accordingly, the defendant seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40.[3]

"[T]o deprive a defendant of his constitutional right to a fair trial . . . the prosecutor's conduct must have

---

[3] See footnote 2.

so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." (Internal quotation marks omitted.) *State* v. *Chasse*, 51 Conn. App. 345, 355, 721 A.2d 1212 (1998), cert. denied, 247 Conn. 960, 723 A.2d 816 (1999); see *State* v. *Correa*, 241 Conn. 322, 356–57, 696 A.2d 944 (1997).

"In determining whether this claim of prosecutorial misconduct deprived the defendant of his due process right to a fair trial, we must first decide whether the prosecutor's remarks were, in fact, improper, and, if so, whether they substantially prejudiced the defendant. *State* v. *Provost*, 49 Conn. App. 56, 64–65, 713 A.2d 879, cert. granted on other grounds, 247 Conn. 914, 722 A.2d 808 (1998); see also *State* v. *Oehman*, 212 Conn. 325, 336, 562 A.2d 493 (1989). In doing so, we have focused on several factors, [i]ncluded among those factors are the extent to which the misconduct was invited by defense conduct or argument; *State* v. *Falcone*, 191 Conn. 12, 23, 463 A.2d 558 (1983); the severity of the misconduct; see *United States* v. *Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981) [cert. denied, 456 U.S. 989, 102 S. Ct. 2269, 73 L. Ed. 2d 1284 (1982)]; the frequency of the misconduct; *State* v. *Couture*, 194 Conn. 530, 562–63, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985); see *State* v. *Doehrer*, [200 Conn. 642, 654, 513 A.2d 58 (1986)]; *State* v. *Palmer*, [196 Conn. 157, 164, 491 A.2d 1075 (1985)]; the centrality of the misconduct to the critical issues in the case; *Hawthorne* v. *United States*, 476 A.2d 164, 172 (D.C. App. 1984); the strength of the curative measures adopted; *United States* v. *Modica*, supra, 1181; *Harris* v. *United States*, 402 F.2d 656, 657 n.1 (D.C. Cir. 1968);

*State* v. *Doehrer*, supra, 654; and the strength of the state's case. See *United States* v. *Modica*, supra, 1181; *State* v. *Couture*, supra, 564; see also *State* v. *Glenn*, 194 Conn. 483, 492, 481 A.2d 741 (1984)." (Internal quotation marks omitted.) *State* v. *Chasse*, supra, 51 Conn. App. 355–56.

We do not scrutinize each individual comment in a vacuum, but rather, "we must review the comments complained of in the context of the entire trial." *State* v. *Robinson*, 227 Conn. 711, 746, 631 A.2d 288 (1993). Accordingly, "the burden [falls] on the defendant to demonstrate that the remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted." Id.

A

We turn to the defendant's argument that the prosecutor improperly commented on the credibility of Barnwell's testimony. "The prosecutor may not express his own opinion, either directly or indirectly, as to the credibility of witnesses. . . . Nor may he express his opinion, directly or indirectly, as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony. . . . These expressions of opinion are particularly difficult for the jury to ignore because of the special position held by the prosecutor. . . . The jury is aware that he has prepared and presented the case and consequently, may have access to matters not in evidence . . . which the jury may infer to have precipitated the personal opinions." (Citations omitted.) *State* v. *Williams*, 204 Conn. 523, 541–44, 529 A.2d 653 (1987).

During closing argument to the jury, the prosecutor stated in relevant part: "Now, the case hinges on Detective Barnwell and your believing Detective Barnwell . . . and if you don't believe him, if you thought that he wasn't telling the truth, if you thought that he was lying, then you ought not to convict [the defendant],

*but I don't believe that you have the facts before you that would indicate he wasn't telling the truth or would point out that he is lying or trying to frame [the defendant], or any of those things* . . . if you remember what his testimony was in essence." (Emphasis added.) The prosecutor then summarized Barnwell's testimony, discussed the chain of possession of the seized drug evidence and stated: "We find out again that these items tested positive for the presence of cocaine. So that, in a nutshell, is the basis for that first issue, that is, that he sold a narcotic substance, being cocaine, to another person, that being Detective Barnwell . . . who was working in an undercover capacity that day. *The state presented that evidence. The evidence was credible.* There hasn't been any evidence that would cause you to believe that there was some kind of conspiracy to frame him or anything like that . . . ." (Emphasis added.)

Our review of the record leads us to conclude that the alleged misconduct did not rise to the level of substantial prejudice. No pattern or practice of misconduct existed with regard to the prosecutor's statement of evidential credibility. Indeed, a prosecutor may properly comment on the credibility of a witness where, as here, "the comment reflects reasonable inferences from the evidence adduced at trial." *Jenkins* v. *Commissioner of Correction*, 52 Conn. App. 385, 401, 726 A.2d 657, cert. denied, 249 Conn. 920, 733 A.2d 233 (1999). Finally, "[t]he mere use of phrases such as 'I submit,' 'I find,' or 'I believe' does not constitute improper argument." Id., 400. The prosecutor neither personally guaranteed the witness' credibility nor implied that he had knowledge of the witness' credibility outside the record.

B

We next turn to the defendant's argument that the prosecutor made an improper reference that indirectly

commented on the defendant's failure to testify. "It is well settled that comment by the prosecuting attorney . . . on the defendant's failure to testify is prohibited by the fifth amendment to the United States constitution. *Griffin* v. *California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 14 L. Ed. 2d 106, reh. denied, 381 U.S. 957, 85 S. Ct. 1797, 14 L. Ed. 2d 730 (1965)." *State* v. *Arline*, 223 Conn. 52, 66, 612 A.2d 755 (1992). "As we repeatedly have stated, [i]n determining whether a prosecutor's comments have encroached upon a defendant's [fifth amendment] right to remain silent, we ask: Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify?" (Internal quotation marks omitted.) *State* v. *Lemon*, 248 Conn. 652, 659, 731 A.2d 271 (1999); see General Statutes § 54-84. To determine the natural and necessary impact on the jury, the court looks to the context in which the statement was made. *State* v. *Satchwell*, 244 Conn. 547, 571, 710 A.2d 1348 (1998). In addition, some leeway is permitted to account for zeal of counsel in the heat of argument that commonly exists at trial. Id. Indeed, "closing arguments of counsel . . . are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through a lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Donnelly* v. *DeChristoforo*, 416 U.S. 637, 646–47, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974).

The challenged remarks are: "Now, you also have to remember that if the defense concedes that this transaction took place and that it was cocaine and all of this

other stuff, but it wasn't [the defendant] that did it, I would like you to think about two things. The first thing is that *there is not a scintilla of evidence that anyone else did it* because Detective Barnwell was the guy who testified and he was absolutely certain that it was [the defendant] who sold him the drugs. *Nor have you been provided with any motive that Detective Barnwell would have to lie,* nor have you ever been given any reason he would have to be mistaken. Certainly, it's not a mistaken identity case." (Emphasis added.)

The prosecutor's comments were not improper. The challenged remarks were "comment by the prosecutor on the overall quality of the defendant's evidence [that did] not [call] specific attention to the failure of the accused to testify." *State* v. *Magnotti*, 198 Conn. 209, 220, 502 A.2d 404 (1986). "The accused, by his failure to testify, cannot insulate himself from general comment on the weakness of his case, even though his failure so to testify may be perceived by the jury as having contributed to the general weakness about which comment is made." Id. Also, the prosecutor's statement that there was "not a scintilla of evidence that anyone else did it" may reasonably refer to the fact that the jury never heard any evidence offered by defense counsel, not the defendant himself, that contradicted the prosecutor's evidence that pointed to the defendant as the individual who committed the crime. See *State* v. *Marra*, 222 Conn. 506, 535, 610 A.2d 1113 (1992). The prosecutor's relatively general comments do not rise to the improper level of specific, repeated, rhetorical questions to which only the defendant could supply the answers. See *State* v. *Correia*, 33 Conn. App. 457, 467–68, 636 A.2d 860, cert. denied, 229 Conn. 911, 642 A.2d 1208, cert. denied, 513 U.S. 898, 115 S. Ct. 253, 130 L. Ed. 2d 174 (1994); *State* v. *Allen*, 9 Conn. App. 169, 178–81, 517 A.2d 1043 (1986), rev'd on other grounds, 205 Conn. 370, 533 A.2d 559 (1987).

The prosecutor's closing argument does not naturally or necessarily lead the jury to conclude that he was commenting on the defendant's failure to testify.[4] We hold, therefore, that the prosecutor's argument did not infringe on the defendant's constitutional right to a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] Moreover, it is important to note that as with other challenges made here, the defendant did not object and failed to ask for any curative instruction with regard to this issue. "The defendant, therefore, presumably did not regard those remarks . . . as seriously prejudicial at trial." *State* v. *Cox*, 50 Conn. App. 175, 180, 718 A.2d 60 (1998), aff'd, 251 Conn. 54, 738 A.2d 652 (1999).