JOYCE GILLOGLY *v.* COMMISSIONER OF
MOTOR VEHICLES
(AC 19959)

Lavery, C. J., and Dranginis and Peters, Js.

Argued November 28, 2000—officially released January 30, 2001

*Milo J. Altschuler*, for the appellant (plaintiff).

*Robert L. Marconi*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

*Conrad Ost Seifert* filed a brief for the Connecticut Criminal Defense Lawyers Association as amicus curiae.

*Opinion*

DRANGINIS, J. The plaintiff, Joyce Gillogly, appeals from the judgment of the trial court dismissing her appeal from the decision by the defendant commissioner of motor vehicles (commissioner) suspending her license to operate a motor vehicle for six months pursuant to General Statutes § 14-227b[1] and denying her motion to reargue.[2] On appeal, the plaintiff claims that the court improperly (1) found sufficient evidence in the record to support the hearing officer's conclusion that the police lawfully stopped the plaintiff's vehicle and (2) abused its discretion by reversing an evidentiary

[1] General Statutes § 14-227b (b) provides: "If any such person, having been placed under arrest for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor, and thereafter, after being apprised of his constitutional rights, having been requested to submit to a blood, breath or urine test at the option of the police officer, having been afforded a reasonable opportunity to telephone an attorney prior to the performance of such test and having been informed that his license or nonresident operating privilege may be suspended in accordance with the provisions of this section if he refuses to submit to such test or if he submits to such test and the results of such test indicate that the ratio of alcohol in his blood was ten-hundredths of one per cent or more of alcohol, by weight, and that evidence of any such refusal shall be admissible in accordance with subsection (f) of section 14-227a and may be used against him in any criminal prosecution, refuses to submit to the designated test, the test shall not be given; provided, if the person refuses or is unable to submit to a blood test, the police officer shall designate the breath or urine test as the test to be taken. The police officer shall make a notation upon the records of the police department that he informed the person that his license or nonresident operating privilege may be suspended if he refused to submit to such test or if he submitted to such test and the results of such test indicated that the ratio of alcohol in his blood was ten-hundredths of one per cent or more of alcohol, by weight."

[2] The plaintiff initially identified, in addition to the court's judgment of dismissal of her appeal, the denial of her motion to reargue as the judgment from which she appeals. The plaintiff's statement of issues on appeal, appellate brief and oral argument did not, however, address the denial of the motion to reargue as a basis for appeal. Therefore, we will consider only those claims that relate to the judgment of dismissal. See *State* v. *Perez*, 57 Conn. App. 385, 387 n.3, 748 A.2d 384 (2000).

ruling of the hearing officer. The plaintiff further claims that the suspension of her license violates article first, §§ 7 and 9, of the constitution of Connecticut[3] because the police did not have a reasonable and articulable suspicion of criminal activity to justify a stop of her vehicle. We affirm the judgment of the trial court on the evidentiary issues and, accordingly, we need not address the plaintiff's constitutional claim.

The following facts and procedural history are necessary for our resolution of this appeal. On January 22, 1999, at approximately 3:10 p.m., while assigned to a school crossing post, Officer James Garfield of the Milford police department was flagged down by an unidentified school bus driver. The bus driver informed Garfield that he had observed a blue car driving erratically directly behind his bus and that it had tried to pass the bus at a previous stop. When the bus pulled away, Garfield blocked the road in front of the blue car and signaled for its driver to pull to the side of the road. The driver, later identified as the plaintiff, ignored his request and continued to proceed slowly to a nearby stop sign. Garfield then walked to the driver's side window, attempted to open the door and again ordered the plaintiff to stop. The vehicle then rolled backward and finally came to a stop.

Garfield immediately detected the odor of alcohol on the plaintiff's breath. A second police officer, Tom Bassett, arrived at the scene and also detected the odor. Both officers observed that the plaintiff was unsteady

[3] The constitution of Connecticut, article first, § 7, provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

The constitution of Connecticut, article first, § 9, provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

and had slurred speech. She refused to perform any field sobriety tests. The plaintiff was arrested and charged with operating a motor vehicle while under the influence of liquor, drugs or both in violation of General Statutes § 14-227a.[4] She further refused to perform a Breathalyzer test.

On January 28, 1999, the commissioner notified the plaintiff that, pursuant to § 14-227b, her license to operate a motor vehicle would be suspended for six months effective February 21, 1999. On February 23, 1999, at the plaintiff's request, a hearing was held to determine if she had been operating her vehicle under the influence of liquor, drugs or both.

At the hearing, the plaintiff, represented by counsel, objected to the admission of Bassett's police report. The plaintiff argued that the report, which detailed the incident, contained hearsay because it referred to statements made by the bus driver, other police officers including Garfield, and another driver who witnessed the plaintiff's driving. The hearing officer agreed to redact only those statements made by the bus driver, whereupon the report was submitted into evidence. After the hearing, the hearing officer found that the police had probable cause to arrest the plaintiff on the charge of operating a motor vehicle in violation of § 14-227a, that she was arrested and charged with violating § 14-227a and that she refused to submit to a Breathalyzer test. Consequently, her license was suspended.

The plaintiff appealed pursuant to the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq. The court affirmed the hearing officer's decision and dismissed the plaintiff's appeal. On August 6, 1999,

---

[4] General Statutes § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. . . ."

the court further denied the plaintiff's motion to reargue.[5] This appeal followed.

The plaintiff first claims that the court improperly found that there was sufficient evidence to support the hearing officer's conclusion because the hearing officer relied on evidence not in the record, specifically, the bus driver's statement. She further contends that the court improperly reversed the hearing officer's decision to exclude the bus driver's statement from the evidence. She argues that because the hearing officer's decision to redact the statement was in accordance with the law, the court abused its discretion when it reversed the hearing officer's evidentiary ruling and relied on the statement to affirm the hearing officer's finding of probable cause. Because these two claims are intertwined, we address them together.

The following additional facts are necessary to address these claims. At the suspension hearing, the hearing officer clearly stated that he would redact from Bassett's report the statements made by the bus driver as hearsay.[6] The plaintiff, through her counsel, argued that the police did not have a reasonable and articulable suspicion to justify a lawful stop of her vehicle because they did not observe her driving erratically except when Garfield was trying to open her car door. The hearing officer then asked the plaintiff's counsel about the school bus driver's statement to Garfield,[7] and the focus

---

[5] See footnote 2.

[6] The hearing officer stated: "Counsel, with respect to the unidentified school bus driver, that part of the report I will redact, but as to other statements in here, Officer Garfield specifically, there has been case law that says in administrative hearings the police officer can deem as reliable the reports conveyed to him by other police officers as they can be identified; so, as to the statements of the school bus driver, as I stated previously, I will try to, as best as I can, redact those as to Officer Garfield."

[7] The hearing officer stated: "Okay. You don't think alerting of the police on school patrol duty to an erratic operator by the school bus driver [was] sufficient to make a stop for an inquiry?"

of the hearing turned to whether that statement would be sufficient to justify the stop. The plaintiff argued that the bus driver's statement should not be considered because it was an anonymous tip and presented to the hearing officer a copy of a court decision supporting her argument. The hearing officer considered the decision offered by the plaintiff and determined that it was distinct from the case before him.

During the course of the proceedings, there was no additional discussion regarding which statements in Bassett's report would be redacted. Further, Bassett's report, as contained in the record, is devoid of any marks indicating that the hearing officer redacted certain statements.

Ultimately, in his decision rendered February 24, 1999, the hearing officer concluded that the stop was lawful on the ground that the police officer had spoken with an unidentified bus driver who reported the plaintiff's erratic driving and that the officer thereafter immediately stopped the plaintiff's vehicle to investigate.

On appeal to the trial court, the plaintiff argued that the hearing officer's decision was in error because there was insufficient evidence to support the finding that the police had a reasonable and articulable suspicion of criminal activity to justify a stop of her vehicle. The court found that although the bus driver's statement was purportedly redacted from the record, it was the basis for the hearing officer's finding of probable cause. It further found, however, that the hearing officer's initial decision to exclude the statement from the record was improper on the ground that hearsay is admissible in an administrative context to show probable cause. Consequently, it upheld the hearing officer's decision, ruling that "the bus driver's report to the police was clearly admissible evidence and was properly considered by the hearing officer . . . ." We conclude that

the court was incorrect in its reasoning, but reached the proper result.

It is well established that "[t]his court can sustain a judgment on a different theory than that adopted by the trial court." *State* v. *Mierez*, 24 Conn. App. 543, 547, 590 A.2d 469, cert. denied, 219 Conn. 910, 911, 593 A.2d 136 (1991). Thus, we affirm the court's judgment on the ground that the hearing officer did not redact the bus driver's statement from the police report and, therefore, it was properly considered as evidence by the trial court.

The standard of review in administrative appeals is well settled. "Judicial review of an agency decision is limited. . . . [W]e must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . .

"Where the administrative agency has made a factual determination, the scope of review ordinarily is expressed in such terms as substantial evidence or sufficient evidence. . . . Where, however, the administrative agency has made a legal determination, the scope of review ordinarily is plenary. . . . Pursuant to our standard of review, we examine whether the conclusions of law reached by the trial court resulted from a correct application of the law to the facts of this case." (Citations omitted; internal quotation marks omitted.) *Alexander* v. *Retirement Board*, 57 Conn. App. 751, 757–58, 750 A.2d 1139, cert. denied, 254 Conn. 902, 755 A.2d 217 (2000); see also *Christian Activities Council, Congregational* v. *Town Council*, 249 Conn. 566, 581, 735 A.2d 231 (1999).

After reviewing the transcript, we conclude that although the hearing officer stated that he would redact the bus driver's statement and exclude it from evidence, he did not, in fact, do so. Rather, he considered the bus driver's statement, heard argument from the plaintiff regarding its effect and based his decision on the statement.

We further note that the plaintiff failed to move for reconsideration of the hearing officer's decision on the basis of an error of fact or law pursuant to General Statutes § 4-181a.[8] Although the plaintiff asserted at oral argument that such a motion was filed, the record reveals no such motion, nor did the plaintiff move to correct the record on appeal pursuant to Practice Book § 7-9.[9]

Because the transcript reveals that the hearing officer did not exclude the bus driver's statement and the plaintiff did not move for reconsideration, we conclude that the statement of the bus driver properly was part of the record. We therefore conclude that the court did not abuse its discretion when it considered the statement of the bus driver to determine whether the police had a reasonable and articulable suspicion to justify a stop of the plaintiff's vehicle.

The plaintiff does not argue on appeal that there was no probable cause to arrest her even if the bus driver's statement properly was part of the record. We note,

---

[8] General Statutes § 4-181a (a) (1) provides in relevant part: "[A] party in a contested case may, within fifteen days after the personal delivery or mailing of the final decision, file with the agency a petition for reconsideration of the decision on the ground that: (A) An error of fact or law should be corrected . . . ." If the agency grants the request for reconsideration, the agency is then required to conduct additional proceedings "as may be necessary to render a decision modifying, affirming, or reversing the final decision." General Statutes § 4-181a (a) (3).

[9] Practice Book § 7-9 provides: "The clerk may, when so directed by a judicial authority, make up, amend and complete any imperfect or unfinished record in such manner as the judicial authority may direct."

however, that the record before the hearing officer and the trial court clearly supports the hearing officer's finding of probable cause. Not only did the bus driver indicate that the plaintiff was driving erratically, but the plaintiff initially failed to comply with Garfield's order to stop and, when she did stop her vehicle, she allowed it to roll backward. In addition, both officers at the scene heard her slurred speech and observed her unsteady gait.

Having determined that the bus driver's statement was part of the record, we affirm the court's conclusion that the record contains sufficient evidence to support the hearing officer's finding of probable cause. We therefore need not discuss the plaintiff's constitutional claim, which founders because of that finding.

The judgment is affirmed.

In this opinion the other judges concurred.