STATE OF CONNECTICUT *v.* JOSE E. ALVARADO
(AC 18284)

Spear, Mihalakos and Shea, Js.

 

Argued December 7, 2000—officially released February 27, 2001

*Katharine S. Goodbody*, special public defender, for the appellant (defendant).

*Joy K. Fausey*, deputy assistant state's attorney, with whom, on the brief, were *Eugene Callahan*, state's attorney, and *Richard Colangelo*, assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant, Jose Alvarado, appeals from the judgment of conviction, rendered after a jury trial, of one count of sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b)[1] and one count of sale of narcotics within 1500 feet of a school in violation of General Statutes § 21a-278a (b).[2] The defendant claims that (1) the trial

---

[1] General Statutes § 21a-278 (b) provides in relevant part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance . . . and who is not at the time of such action a drug-dependent person . . . shall be imprisoned not less than five years nor more than twenty years . . . ."

[2] General Statutes § 21a-278a (b) provides in relevant part: "Any person who violates section . . . 21a-278 by manufacturing, distributing, selling, prescribing, dispensing, compounding, transporting with the intent to sell or dispense, possessing with the intent to sell or dispense, offering, giving or administering to another person any controlled substance in or on, or

court improperly denied his motion for judgment of acquittal based on insufficient evidence and (2) there was insufficient evidence to support the jury's conclusion that the defendant was not drug-dependent at the time of the offense. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of February 1, 1996, officers from the Norwalk police department established a surveillance operation in the area of South Main and Monroe Streets, a hub for illegal drug activity and the source of many citizens' complaints. Officer Arthur Weisgerber observed the area from the window of a vacant second floor apartment. Weisgerber had a clear, unobstructed view of the intersection, which was well illuminated by streetlights, and conducted his surveillance with the aid of a pair of high powered binoculars.

At approximately 9:25 p.m., Weisgerber observed a maroon car approach the intersection and stop at a red light. As the vehicle came to a stop, a man he recognized and knew by name, later identified as the defendant, walked out from the sidewalk and entered the front passenger side of the vehicle. Weisgerber observed an exchange between the defendant and the driver in which the defendant gave to the driver a small white object and the driver gave to the defendant a piece of green paper currency. The small white object was about the size of a pebble and packaged in plastic. Weisgerber testified that on the basis of his training and experience,

within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school . . . shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of section . . . 21a-278. To constitute a violation of this subsection, an act of transporting or possessing a controlled substance shall be with intent to sell or dispense in or on, or within one thousand five hundred feet of, the real property comprising a public or private elementary or secondary school . . . ."

the packaging, size, color and shape of the object was consistent with street level packaging of crack cocaine. The exchange took approximately twelve to fifteen seconds and occurred within 1500 feet of a school.

As soon as the transaction was completed, the defendant got out of the vehicle and walked back to the sidewalk. After the vehicle drove away, Weisgerber radioed the arrest team, described what he had seen and said that he suspected it was a drug transaction. He also described the vehicle, the driver and the direction in which the vehicle was headed. Two to four minutes later,[3] the arrest team located the vehicle and arrested the driver after discovering crack cocaine in the right front pocket of his coat. The cocaine was in the same form as the small white object described by Weisgerber. Weisgerber did not see the defendant again that evening, but after completing the surveillance operation, he confirmed the defendant's identity by means of a photograph in the police department's identification bureau and prepared a warrant for the defendant's arrest.

At approximately 8:30 p.m. on February 8, 1996, while conducting another surveillance operation, Weisgerber again observed the defendant in the area of South Main and Monroe Streets. Weisgerber radioed the arrest team that there was an active arrest warrant for the defendant, and police arrested the defendant that evening.

Thereafter, the defendant was convicted of sale of narcotics and sale of narcotics within 1500 feet of a school. The court denied the defendant's motions for a judgment of acquittal made after the close of evidence and after the jury returned a guilty verdict. This appeal followed.

---

[3] Weisgerber testified that the vehicle was apprehended "a couple minutes later," while another officer who had arrested the driver testified that three or four minutes elapsed between the radio report and the arrest.

I

The defendant first claims that the court improperly denied his motion for judgment of acquittal because the evidence presented at trial was insufficient to prove beyond a reasonable doubt that he sold narcotics. We disagree.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Robertson*, 254 Conn. 739, 783, 760 A.2d 82 (2000).

"[T]he offense of the sale of a narcotic substance requires proof of a sale." (Internal quotation marks omitted.) *State* v. *Forde*, 52 Conn. App. 159, 165, 726 A.2d 132, cert. denied, 248 Conn. 918, 734 A.2d 567

(1999). In *State* v. *Knight*, 50 Conn. App. 109, 717 A.2d 274 (1998), we considered a nearly identical factual scenario to the one in the present case in which the defendant was charged with sale of narcotics and sale of narcotics within 1500 feet of a school. In that case, an officer using high powered binoculars observed the defendant exchange a clear plastic bag containing a small white object for paper currency. The recipient of the package was arrested almost immediately thereafter and found to possess a clear plastic bag containing cocaine. The defendant was arrested approximately thirty minutes later. On appeal, the defendant challenged both the credibility of the officer and the sufficiency of the evidence, and we concluded with respect to the sufficiency claim that "the trial court properly determined that there was sufficient evidence from which a trier of fact reasonably could conclude beyond a reasonable doubt that the defendant committed the crimes charged." Id., 113.

The most noteworthy difference between the facts here and those in *Knight* is that the buyer in *Knight* was on foot and remained in sight of the officers between the time of the transaction and the time of his arrest, while the driver of the maroon car in the present case left the scene of the transaction and was not in view of the officers for two to four minutes prior to his arrest. We conclude, however, construing the evidence in the light most favorable to sustaining the verdict, that despite the short delay between the time of the transaction and the time of the driver's arrest, the jury reasonably could have inferred that the small white object that Weisgerber observed the defendant give to the driver was the same small white object, later determined by a toxicologist to be cocaine, that was found on the driver only two to four minutes later, and that this and other evidence was sufficient to establish the defendant's guilt beyond a reasonable doubt.

The defendant relies on *State* v. *Davis*, 38 Conn. App. 621, 626, 662 A.2d 812, cert. denied, 235 Conn. 919, 665 A.2d 907 (1995), *State* v. *Arbelo*, 37 Conn. App. 156, 160, 655 A.2d 263 (1995), and *State* v. *Mierez*, 24 Conn. App. 543, 553–54, 590 A.2d 469, cert. denied, 219 Conn. 910, 911, 593 A.2d 136 (1991), to support his argument that there was insufficient evidence to permit a finding of guilt. In each of these cases, we concluded that the evidence did not support a finding of guilt beyond a reasonable doubt because no witnesses could identify the objects exchanged in the alleged drug transactions.[4] The defendant argues that the present case is similar because Weisgerber did not testify that the driver actually gave the defendant currency or that the object he saw in the transaction was the same object that the police found on the driver when he was arrested. We conclude, however, that the circumstances in this case are distinguishable from those in *Arbelo*, *Mierez* and *Davis* because here Weisgerber testified that on the basis of his training and experience, he observed what he believed were drugs and money pass between the defendant and the driver, and immediately radioed the arrest team that he suspected that a drug transaction had taken place. Furthermore, the object later found on the driver fit the description of the object that Weisgerber had observed the defendant give to the driver during the transaction.

The defendant also argues that the present case differs from *State* v. *Bowens*, 24 Conn. App. 642, 649, 591 A.2d 433, cert. denied, 220 Conn. 906, 593 A.2d 971 (1991), and *State* v. *Baskins*, 12 Conn. App. 313, 317,

---

[4] In *State* v. *Arbelo*, supra, 37 Conn. App. 160, no state's witness observed drugs or money pass between the defendant and the buyer. In *State* v. *Mierez*, supra, 24 Conn. App. 546, 553, police officers observed the defendant exchange small items with pedestrians and passing drivers, but did not observe what the items were and did not see any currency change hands. In *State* v. *Davis*, supra, 38 Conn. App. 625, none of the witnesses observed the defendant give drugs to the buyer.

530 A.2d 663, cert. denied, 205 Conn. 811, 532 A.2d 586 (1987), in which this court found that the evidence was sufficient to support the guilty verdicts. He asserts that the facts in this case are unlike those in *Baskins* and *Bowens* because Weisgerber did not see the defendant obtain the object allegedly exchanged in the transaction, the arrest team recovered neither drugs nor money from the defendant and the buyer of the drugs did not confirm any details of the alleged sale by the defendant. We conclude, however, that these distinctions are far less significant than the fact that Weisgerber observed a small white object pass from the hands of the defendant to the driver in exchange for currency, and that a similar object was found shortly thereafter in a pocket of the driver's coat. We, therefore, remain unpersuaded that the evidence was insufficient to prove beyond a reasonable doubt that the defendant sold narcotics and that the court improperly denied the defendant's motion for judgment of acquittal.

The defendant maintains that proof beyond a reasonable doubt requires that the evidence exclude every reasonable hypothesis of innocence. In his brief, the defendant cites testimony to the effect that he had not been observed making any narcotics transactions on February 8, 1996, the evening that he was arrested, that drug dealers typically make more than one transaction per night and that Weisgerber observed him allegedly make only one transaction on the night of February 1, 1996. He also points out that the driver never identified the person who sold him the narcotics and that no attempt was made to confirm that the defendant was the seller. He further notes that Weisgerber testified that a narcotics seller typically keeps a "stash" of narcotics in an area close to where he is selling, but that he did not believe that the defendant had such a "stash" on the night of the transaction. We nonetheless reject the defendant's position because, under our traditional

scope of review of a jury verdict, "we give deference not to the hypothesis of innocence posed by the defendant, but to the evidence and the reasonable inferences drawable therefrom that support the jury's determination of guilt." *State* v. *Sivri*, 231 Conn. 115, 134, 646 A.2d 169 (1994). We thus conclude that the jury properly rejected those hypotheses of innocence and reasonably found sufficient evidence of guilt.

## II

The defendant next claims that he met his burden of proving, by a preponderance of the evidence, that he was drug-dependent at the time of the offense and that the state failed to rebut this evidence. He claims that a psychiatrist testified at trial that the defendant was drug-dependent on February 1, 1996, and that the testimony of the state's rebuttal witnesses was insufficient to overcome the psychiatrist's testimony. We disagree.

"To obtain a conviction under § 21a-278 (b), the state must prove that the defendant possessed narcotics with the intent to sell them. [T]he absence of drug dependency is not an element of the offense . . . . Rather, [proof of drug dependency provides] an exemption from liability that must be proved by the defendant. . . . [A] person charged with sale of narcotics pursuant to § 21a-278 (b) is presumed not to have been drug-dependent, but may avoid liability under § 21a-278 (b) by proving by a preponderance of the evidence that he was drug-dependent at the time of the offense. . . .

"Whether the defendant met his burden is for the jury to determine. It is without question that the jury is the ultimate arbiter of fact and credibility. . . . As such, it may believe or disbelieve all or any portion of the testimony offered. . . .

"A trier of fact is free to reject testimony even if it is uncontradicted . . . and is equally free to reject part

of the testimony of a witness even if other parts have been found credible. . . . It is axiomatic, however, that, in rejecting such testimony, a fact finder is not free to conclude that the opposite is true." (Citations omitted; internal quotation marks omitted.) *State* v. *Bradley*, 60 Conn. App. 534, 543–44, 760 A.2d 520, cert. denied, 255 Conn. 921, 763 A.2d 1042 (2000).

The following additional facts are necessary to our resolution of this claim. At trial, the defendant presented the testimony of Jay Berkowitz, a psychiatrist qualified as an expert in drug and alcohol dependency. Berkowitz testified that he had evaluated the defendant on March 7, 1997, during an initial "intake examination" for persons entering jail, and again on November 11, 1997, at defense counsel's request, and that the defendant admitted to extensive and long-term use of marijuana and alcohol. On the basis of these evaluations, Berkowitz offered the opinion that the defendant was drug-dependent on February 1, 1996. Berkowitz conceded, however, that he based his opinion solely on the defendant's own statements and that he did not inquire further into the defendant's medical records, did not conduct any medical tests on the defendant and saw no physical signs of alcohol or drug dependency on either day that he evaluated the defendant, despite the defendant's statement that he smoked five to ten blunts of marijuana[5] and drank about two quarts of vodka daily.

In rebuttal, the state presented the testimony of John Sacco, a certified substance abuse counselor. Sacco testified that he had met with the defendant on August 4, 1995, and that he had observed no physical signs of

---

[5] "A blunt typically is a small cigar that is hollowed out and filled with illy and smoked in the manner of a marijuana cigarette." (Internal quotation marks omitted.) *State* v. *Billie*, 250 Conn. 172, 177 n.10, 738 A.2d 586 (1999).

substance abuse. Sacco also testified that the defendant denied using drugs or alcohol and that a urine sample that the defendant had provided was negative for both substances. Wilma Davidson, the defendant's probation officer, who was not a certified counselor but who met with the defendant on a monthly basis in 1995 and 1996, also testified for the state that the defendant never appeared to be under the influence of drugs or alcohol and that he denied using those substances.

"The credibility of expert witnesses and the weight to be given to their testimony and to that of lay witnesses . . . is determined by the trier of fact. . . . In its consideration of the testimony of an expert witness, the trial court might weigh, as it sees fit, the expert's expertise, his opportunity to observe the defendant and to form an opinion, and his thoroughness. It might consider also the reasonableness of his judgments about the underlying facts and of the conclusions which he drew from them. . . .

"It is well settled that the trier of fact can disbelieve any or all of the evidence proffered . . . including expert testimony, and can construe such evidence in a manner different from the parties' assertions." (Citations omitted; internal quotation marks omitted.) *State v. DeJesus*, 236 Conn. 189, 201, 672 A.2d 488 (1996). Construing the evidence in the present case in the light most favorable to sustaining the verdict, we conclude that it was not unreasonable for the jury to have found the testimony of Sacco and Davidson more credible and compelling than the testimony of Berkowitz, who had relied exclusively on the defendant's own statements and had failed to seek corroborating evidence of the defendant's alleged drug and alcohol abuse. Accordingly, we conclude that it was reasonable for the jury to reject Berkowitz's opinion and that the defendant did not meet his burden of proving, by a preponder-

ance of the evidence, that he was drug-dependent at the time of the offense.

The judgment is affirmed.

In this opinion the other judges concurred.