STATE OF CONNECTICUT *v.* WILLIS WRIGHT
(AC 28037)

McLachlan, Beach and Pellegrino, Js.

---

Argued January 4—officially released March 11, 2008

*Christopher M. Neary*, special public defender, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, former state's attorney, and *Jeffrey Lee*, assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Willis Wright, appeals from the judgment of the trial court revoking his probation pursuant to General Statutes § 53a-32. On appeal, he

claims that the court (1) improperly found that there was sufficient evidence before it to establish, by a preponderance of evidence, that he violated the terms of his probation and (2) abused its discretion when it found that the rehabilitative aspects of the defendant's probation were no longer being met. We affirm the judgment of the trial court.

In 2003, the defendant pleaded guilty to possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a) and was sentenced to a term of ten years imprisonment, execution suspended after two years, and five years probation. The defendant also pleaded guilty to reckless endangerment in the first degree in violation of General Statutes § 53a-63 and was sentenced to one year imprisonment, execution suspended, and three years probation, to run concurrently with his sentence on the narcotics charge. In January, 2004, the defendant was released from prison and began serving his probationary term. One condition of his probation was that he not "violate any criminal law of the United States, this state or any other state or territory."

Evidence was presented at the violation of probation hearing from which the court reasonably could have found the following facts. On November 23, 2004, the defendant and his girlfriend, Alisha Padilla, were engaged in a dispute while Padilla was en route to cash a check. After Padilla told the defendant she no longer wanted to speak with him, the defendant grabbed Padilla's purse from her arm, removed several pieces of identification and threw the purse on the ground. Padilla called the police, who arrested the defendant and charged him with robbery in the third degree in violation of General Statutes § 53a-136. Padilla later indicated that she did not want to pursue charges against the defendant. The defendant's probation officer, Emily

Cross, noted the arrest but did not pursue a warrant for his arrest for violation of probation at that time.

The following summer, on August 2, 2005, Officer William Rivera of the Hartford police department and United States Marshal Andrew Tingley were assigned to patrol the north end of Hartford as part of a joint task force aimed at combating violent crime. They were in an unmarked car with tinted windows and were dressed in plain clothes. As they were heading north on Main Street, Rivera saw the defendant walking along the street and drove over to the curb. Rivera wanted to speak with the defendant, whom he recognized from a previous arrest, about a shooting that had taken place earlier in the summer in which the defendant had been shot and injured and the defendant's friend had been killed. Rivera also thought the defendant might be in possession of a handgun.

After Rivera had driven to the curb, Tingley rolled down the passenger side front window. The defendant approached the car and, after seeing the occupants, put his hand near his waistband and exposed a black handle. Tingley and Rivera thought the object was a gun, and Rivera sent a dispatch alerting Hartford police that the defendant had a firearm. When the defendant saw Rivera making a police dispatch, he immediately fled northbound on Main Street. Rivera and Tingley pursued the defendant by vehicle and then on foot. Their pursuit was assisted by civilians who told them the direction in which the defendant was headed. Eventually, the foot chase led Tingley and Rivera to 29 Mather Street, a multifamily residence, where they were told by police officers already at the scene that two individuals had run into the building.

One of those officers, Detective Patrick Farrell, after having arrived at the scene, saw that a panel of the right front door of the building appeared to have been

kicked in. Farrell looked into the opening and saw an individual hiding in the stairwell. Officers entered the building and detained a Hispanic male. Because he did not fit the description of the defendant, a black male, the officers continued to search the building until they came to a bedroom in the apparently abandoned third floor apartment that was locked from the inside. At that time, there were five or six officers on the third floor, and transmission over the police radio was loud enough for anyone in the third floor to hear that police were present. A canine unit was dispatched, and police announced that a dog was going to search the premises. A police dog searched for but did not locate the defendant. A SWAT team was then dispatched. While waiting for it to arrive, Farrell heard noises coming from the locked bedroom. Officers forced their way into the room and found the unarmed defendant hiding in a closet. The defendant was arrested and charged with burglary,[1] criminal possession of a weapon, carrying a pistol without a permit, theft of a firearm and interfering with a peace officer. After the defendant was arrested, Tingley and Rivera attempted to retrace the defendant's path. They found a firearm in a grassy area behind a fence but had not seen the defendant run past that area. When Cross became aware of the second arrest, she pursued a warrant for the defendant's arrest for violation of probation, as she believed that the beneficial aspects of probation no longer existed for the defendant.

On June 27 and July 20, 2006, a violation of probation hearing was held at which Padilla, Tingley, Farrell, Cross and the defendant testified before the court, *Mullarkey, J.* After hearing testimony, on July 20, 2006, the

---

[1] The record is not clear as to whether burglary in the second degree or burglary in the third degree was claimed by the state to be a basis of the violation of probation hearing. Because the court clearly found that the defendant committed burglary in the third degree, the discrepancy is immaterial.

court found a violation of a condition of the defendant's probation, concluding, "by more than a fair preponderance of the evidence," that the state had met its burden of proof on the charges of burglary in the third degree and criminal trespass in the second degree. The court further found that "the beneficial and rehabilitative aspects of the defendant's probation not only are no longer being met but were not even being met while the defendant was on probation."

On July 28, 2006, the defendant pleaded guilty to robbery and larceny charges arising out of his conduct on November 23, 2004.[2] The court sentenced the defendant to serve a total effective sentence of ninety months on those charges. On July 28, 2006, the court also sentenced the defendant to serve a ninety month sentence on the violation of probation charge to run concurrently with his sentence on the burglary and robbery conviction. This appeal followed.

As a preliminary matter, the state claims that, pursuant to *State* v. *Singleton*, 274 Conn. 426, 436, 876 A.2d 1 (2005), and *State* v. *Preston*, 93 Conn. App. 527, 889 A.2d 845, cert. granted, 278 Conn. 901, 896 A.2d 106 (2006), the defendant's appeal is moot because he pleaded guilty to charges that were included in one of the grounds for the state's claim that the defendant violated the terms of his probation. We are not persuaded.

Mootness implicates the subject matter jurisdiction of this court. *State* v. *Singleton*, supra, 274 Conn. 436. It is a well settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction. *Connecticut Coalition Against Millstone* v. *Rocque*, 267 Conn. 116, 125, 836 A.2d 414 (2003). "A

---

[2] Specifically, the defendant pleaded guilty to larceny in the second degree in violation of General Statutes § 53a-123 and robbery in the third degree in violation of § 53a-136.

case becomes moot when due to intervening circumstances a controversy between the parties no longer exists." (Internal quotation marks omitted.) *Board of Education* v. *State Board of Education*, 243 Conn. 772, 777, 709 A.2d 510 (1998). Here, the warrant against the defendant for violation of probation was based on charges arising out of two separate events, namely, the November, 2004 robbery incident and the August, 2005 burglary incident. In its oral decision regarding the violation of probation, however, the court made an unequivocal finding only as to the burglary. Therefore, despite the defendant's guilty plea as to the robbery, an actual controversy still exists as to the conduct that gave rise to the court's finding of a violation of probation. Put another way, as in *Singleton*, the defendant here pleaded guilty to a crime charged as a basis for violation of probation; unlike in *Singleton*, however, the defendant did not plead guilty to the same criminal transaction for which probation was revoked. Consequently, we conclude that the defendant's claims on appeal are not moot because a controversy exists as to the burglary charge, on which the probation violation was based, but to which the defendant did not plead guilty.[3]

I

The defendant first claims that the court improperly found that there was sufficient evidence before it to establish, by a preponderance of evidence, that he violated the terms of his probation.[4] Specifically, the defendant argues that there was not sufficient evidence to

---

[3] We note that even though the sentences in this case were concurrent, and there is no dispute as to the robbery plea and sentence, case law supports the notion that collateral consequences would result from a finding of violation of probation. See, e.g., *State* v. *McElveen*, 261 Conn. 198, 216, 802 A.2d 74 (2002). The case, therefore, is not moot.

[4] The defendant failed to preserve this claim at trial and now seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "We have stated . . . that [a]ny defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would

find that he committed burglary in the third degree because the state did not establish (1) that the burglary occurred at night, (2) that the building the defendant entered was occupied and (3) that the defendant intended to commit a crime therein. We disagree.

"A challenge to the sufficiency of the evidence is based on the court's factual findings. The proper standard of review is whether the court's findings were clearly erroneous based on the evidence. . . . A court's finding of fact is clearly erroneous and its conclusions drawn from that finding lack sufficient evidence when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *State* v. *Hooks*, 80 Conn. App. 75, 80–81, 832 A.2d 690, cert. denied, 267 Conn. 908, 840 A.2d 1171 (2003).

A

The defendant first argues that there was insufficient evidence to find him guilty of burglary in the third degree because the state failed to prove that "the breaking and entering occurred at night . . . ." We disagree.

In crafting his argument, the defendant fails to recognize that the court found that the state met its burden of proof on the charge of burglary *in the third degree.* Although proof of commission of a burglary at night is a required element of burglary in the second degree; see General Statutes § 53a-102 (a) (1); *State* v. *Russell,*

therefore necessarily meet the four prongs of *Golding.* Accordingly, we conclude that no practical reason exists to engage in a *Golding* analysis of a sufficiency of the evidence claim and, thus, review the challenge as we do any other properly preserved claim." (Internal quotation marks omitted.) *State* v. *Brown,* 90 Conn. App. 835, 838, 879 A.2d 466, cert. denied, 276 Conn. 901, 884 A.2d 1026 (2005).

101 Conn. App. 298, 323, 922 A.2d 191 ("[t]o convict the defendant of burglary in the second degree, the state needed to establish . . . that he entered or remained in the victim's house unlawfully and that he did so at night with the intent to commit a crime therein"), cert. denied, 284 Conn. 910, 931 A.2d 934 (2007); burglary in the third degree has no such requirement. See General Statutes § 53a-103 (a) ("[a] person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein"). Accordingly, the state was not required to prove that the defendant entered 29 Mather Street at night to prove a violation of burglary in the third degree.

B

The defendant next argues, presumably in reference to the court's finding that the state met its burden of proof on the lesser included charge of criminal trespass in the second degree, that the state failed "to show that someone or some entity has occupational rights to [29 Mather Street]." The state counters that such a showing is not required. We agree with the state.

General Statutes § 53a-108 (a) provides in relevant part that "[a] person is guilty of criminal trespass in the second degree when, knowing that such person is not licensed or privileged to do so, (1) such person enters or remains in a building . . . ." The defendant's argument relies on the language found in General Statutes § 53a-100 (a), which provides in relevant part that " '[b]uilding' in addition to its ordinary meaning, includes any watercraft, aircraft, trailer, sleeping car, railroad car or other structure or vehicle *or any building with a valid certificate of occupancy* . . . ." (Emphasis added.) According to the defendant, because the state did not produce a certificate of occupancy for 29 Mather Street and the apartment appeared to be

abandoned, he could not have committed a trespass in the second degree.

"In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result." (Internal quotation marks omitted.) *State* v. *Bennett-Gibson*, 84 Conn. App. 48, 68, 851 A.2d 1214, cert. denied, 271 Conn. 916, 859 A.2d 570 (2004). A common sense reading of § 53a-100 leads us to the conclusion that, *in addition to* the ordinary meaning of building, a certificate of occupancy may be used to bring any other structure within the meaning of the statute if it does not fit within the ordinary meaning of that term. Accordingly, no certificate is required to be shown if the structure in question falls within the ordinary meaning of building. This court, citing Black's Law Dictionary, has defined the term "building" as a "[s]tructure designed for habitation, shelter, storage, trade, manufacture, religion, business, education, and the like." (Internal quotation marks omitted.) *State* v. *Perez*, 78 Conn. App. 610, 636, 828 A.2d 626 (2003), cert. denied, 271 Conn. 901, 859 A.2d 565 (2004). The structure in question here was described by Farrell as a multifamily residence that appeared to be either abandoned or under reconstruction. This description of the premises falls within the ordinary meaning of building. Therefore, the state was not required to prove any specific ability to occupy 29 Mather Street.

C

The defendant also argues that the state failed to prove that he intended to commit a crime upon entering 29 Mather Street. The essence of the defendant's argument is that, notwithstanding his flight from police and subsequent concealment in 29 Mather Street, the court improperly failed to consider the defenses of self-defense and necessity as justifications for the defendant's actions. We are not persuaded.

The following additional facts are necessary to our resolution of the defendant's claim. At the probation hearing, the defendant testified that he was in a constant state of fear during the summer of 2005 because he had sustained a gunshot wound in a shooting incident in which a close friend had been killed. The defendant further testified that he fled from police because he thought they were assailants from a rival neighborhood faction. In reaching its disposition on the violation of probation charge, however, the court expressly did not credit the defendant's version of events.

Nevertheless, even if the defendant's testimony had been credited, neither the statutory defense of self-defense nor the common-law defense of necessity are applicable to the situation at hand. The defense of self-defense may be implicated only when a defendant has used force on another. See General Statutes § 53a-19 (a) ("a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force"). The defendant did not use force on any of the officers present at the scene. The defense of necessity requires "a showing by the defendant (a) that there [was] no . . . legal alternative available, (b) that the harm to be prevented [was] imminent, and (c) that a direct causal relationship [may] be reasonably anticipated to exist between [the] defendant's action and the avoidance of harm." (Internal quotation marks omitted.) *State* v. *Marsala*, 59 Conn. App. 135, 142, 755 A.2d 965, cert. denied, 254 Conn. 948, 762 A.2d 905 (2000). A review of the record reveals that the defendant's testimony provided no evidence of imminent harm or lack of legal alternatives available to him.

Because there was evidence to support a conclusion that the defendant intended to interfere with the police, we conclude that the court's finding that the state met

its burden of proof on the charge of burglary in the third degree was not clearly erroneous.

## II

The defendant next claims that the court abused its discretion by finding that the rehabilitative aspects of probation were not being met.[5] We disagree.

"On the basis of its consideration of the whole record, the trial court may continue or revoke the sentence of probation . . . [and] . . . require the defendant to serve the sentence imposed or impose any lesser sentence. . . . In determining whether to revoke probation, the trial court shall consider the beneficial purposes of probation, namely rehabilitation of the offender and the protection of society. . . . The important interests in the probationer's liberty and rehabilitation must be balanced, however, against the need to protect the public. . . . As we have stated, the court is vested with broad discretion in determining whether to revoke a defendant's probation, and we will not disturb a court's decision revoking a defendant's probation unless an abuse of discretion is manifest or where injustice appears to have been done." (Citation omitted; internal quotation marks omitted.) *State* v. *Miller*, 83 Conn. App. 789, 799–800, 851 A.2d 367, cert. denied, 271 Conn. 911, 859 A.2d 573 (2004).

General Statutes § 53a-32 (b) provides in relevant part that revocation shall not be ordered "except upon consideration of the whole record . . . ." The record reveals that the defendant's underlying conviction was for possession of narcotics and reckless endangerment.

---

[5] We note that *Preston*, supra, 93 Conn. App. 527, held that on the facts of that case there was no controversy as to whether a condition of probation was violated, so any dispute as to the disposition phase was also moot. *Preston* is not relevant to the case at hand because we have concluded that there is a case or controversy on the issue of whether the underlying crime (burglary) was committed.

The probation officer testified that "because we have someone out in the community that keeps getting arrested, and these are becoming increasingly serious crimes, and I've done the best I could to locate this person, to contact this person, to refer him to a program, to meet with him, and he's continued to get arrested . . . in my opinion, the beneficial aspects of probation no longer exist." In addition, the court found that the defendant had been arrested on two separate occasions and had committed burglary. Those findings alone were sufficient to support the revocation of probation. Cf. *Payne* v. *Robinson*, 10 Conn. App. 395, 402–403, 523 A.2d 917 (1987), aff'd, 207 Conn. 565, 541 A.2d 504, cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988). Upon review of the entire record, we conclude that the court's finding that the rehabilitative aspects of probation were not being met was not an abuse of its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.