STATE OF CONNECTICUT *v.* JOHN
JAMES PETTIGREW
(AC 29096)

Harper, Robinson and Berdon, Js.

Argued May 20—officially released September 15, 2009

*Mary H. Trainer*, special public defender, for the appellant (defendant).

*James M. Belforti*, certified legal intern, with whom were *Michele C. Lukban*, senior assistant state's attorney, and, on the brief, *Michael Dearington*, state's attorney, and *Marc G. Ramia*, assistant state's attorney, for the appellee (state).

*Opinion*

BERDON, J. The defendant, John James Pettigrew, appeals from the judgment of the trial court revoking his probation. On appeal, the defendant claims that (1) the evidence adduced at his probation violation hearing was insufficient to support the court's finding that he violated the terms of his probation and (2) the court abused its discretion when it revoked his probation and sentenced him to four years of imprisonment. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. On July 19, 2005, the defendant was convicted as a persistent

offender of assault in the third degree in violation of General Statutes § 53a-40d. The court, *Gold, J.,* sentenced him to five years imprisonment, execution suspended after eight months, and three years probation. The defendant's probation period began on July 19, 2005.[1] The terms of the defendant's probation included the general condition that he abide by the laws of the state of Connecticut.

On June 29, 2006, the New Haven police arrested the defendant and charged him with selling heroin. Earlier that morning, Officer Christopher Perrone of the New Haven police department, who was highly trained and experienced in narcotics investigation, was patrolling the area of Washington Avenue and West Street, due to ongoing complaints of narcotics activity. Perrone observed a man, later identified as the defendant, sitting on the porch of 613 Washington Avenue, an abandoned property known to have been used for the sale of narcotics. After a short time, Perrone observed a white female, later identified as Beverly Coreano, approach the defendant and hand to him what appeared to be currency. The defendant then rode up West Street on a bicycle. Coreano waited several moments before walking in the same direction as the defendant had ridden.

Perrone lost sight of the defendant and Coreano for more than one minute before they returned to the location where he had observed them exchange what had appeared to be currency. Coreano then followed the defendant down an alley, out of Perrone's view. On the basis of Perrone's training and experience, he believed that a narcotics transaction was occurring. Shortly thereafter, he stopped Coreano, who gave him a bag of heroin and stated that she had bought it from the defendant. Coreano also told Perrone that in the past

---

[1] The defendant was released, due to time he already had served, after he was sentenced.

she had bought from the defendant drugs that she believed were heroin. Perrone placed Coreano under arrest and transported her to the police station. On the way to the police station, Perrone observed the defendant standing in front of 613 Washington Avenue. Perrone used his radio to transmit a description of the defendant. At the police station, using an array of photographs, Coreano identified the defendant as the man who had sold her the heroin. She also signed a statement, which was admitted into evidence, indicating that she had purchased the heroin from the defendant, whom she knew as "J.J."

After receiving Perrone's description of the defendant over the radio, Officer Matthew Wynne, also of the New Haven police department, drove to 613 Washington Avenue and placed the defendant under arrest. Wynne did not find any drugs or money in the defendant's possession. On the basis of the information contained in the police report of this incident, the office of adult probation obtained a warrant for the arrest of the defendant for violating the terms of his probation. After conducting a probation violation hearing, the court, *Holden, J.*, found that the defendant had violated the terms of his probation and revoked his probation. The court sentenced the defendant to four years imprisonment out of the four years and four months remaining on his original sentence. This appeal followed.

"A revocation of probation hearing has two distinct components and two purposes. A factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. If a violation is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served." (Internal quotation marks omitted.) *State* v. *Waskiewicz*, 68 Conn. App. 367, 369–70, 789 A.2d 1164 (2002).

I

The defendant claims that the evidence adduced at his probation violation hearing was insufficient to support the court's finding that he violated the terms of his probation by selling narcotics. "To find that a defendant has violated the conditions of probation, the court must determine that the predicate facts underlying the violation have been established by a preponderance of the evidence. . . . In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . Our review is limited to whether such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's determination." (Citation omitted; internal quotation marks omitted.) *State* v. *Misenti*, 112 Conn. App. 562, 567–68, 963 A.2d 696, cert. denied, 291 Conn. 904, 967 A.2d 1220 (2009).

The defendant argues that the court's finding that he sold heroin to Coreano was clearly erroneous. The defendant argues that the evidence was insufficient to support the court's finding because Perrone did not witness the transfer of drugs from the defendant to Coreano and because the defendant possessed neither drugs nor money when Wynne arrested him. We disagree.

Perrone testified that he observed Coreano hand to the defendant an object that he believed was currency. Perrone also testified that on the basis of his years of training and experience in narcotics investigation and the behavior of the defendant and Coreano, he believed

they were engaging in a narcotics transaction. On the basis of his observations, Perrone questioned Coreano about his suspicion. Coreano admitted her involvement in the transaction, gave Perrone a bag of heroin and stated that she had bought it from the defendant. She also stated that on numerous past occasions she had bought from the defendant drugs that she believed were heroin.

This court has held that the evidence was sufficient to support a criminal conviction for the sale of narcotics where an officer observed items that he believed were drugs and money pass between the defendant and a third party and, shortly thereafter, drugs were found on the third party and not on the defendant. *State* v. *Alvarado*, 62 Conn. App. 102, 108–109, 773 A.2d 958, cert. denied, 256 Conn. 907, 772 A.2d 600 (2001). In the present case, the evidence against the defendant was more compelling than that against the defendant in *Alvarado* because, in the present case, Coreano expressly identified the defendant as the man who had sold her drugs, whereas in *Alvarado* the third party never identified the seller. Id., 109. Moreover, *Alvarado* was a criminal case, and, therefore, the state's burden of proof was the more stringent standard of beyond a reasonable doubt. Id., 106. In the present case, the state only needed to prove the allegations against the defendant by a fair preponderance of the evidence. See *State* v. *Davis*, 229 Conn. 285, 295, 641 A.2d 370 (1994).

We conclude that the court's factual findings were not clearly erroneous, and, therefore, the evidence was sufficient to support the court's finding that the defendant violated the terms of his probation.

## II

The defendant next claims that the court abused its discretion when it revoked his probation and sentenced him to four years imprisonment. "On the basis of its

consideration of the whole record, the trial court may continue or revoke the sentence of probation . . . [and] . . . require the defendant to serve the sentence imposed or impose any lesser sentence. . . . In determining whether to revoke probation, the trial court shall consider the beneficial purposes of probation, namely rehabilitation of the offender and the protection of society. . . . The important interests in the probationer's liberty and rehabilitation must be balanced, however, against the need to protect the public. . . . As we have stated, the court is vested with broad discretion in determining whether to revoke a defendant's probation, and we will not disturb a court's decision revoking a defendant's probation unless an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Wright*, 106 Conn. App. 295, 306, 942 A.2d 430, cert. denied, 286 Conn. 921, 949 A.2d 482 (2008); see also General Statutes § 53a-32 (b).

The defendant claims that the court abused its discretion when, during the revocation phase of his probation violation hearing, it considered evidence that while he was on probation, he was arrested for assaulting his girlfriend, who was pregnant with his child. The defendant argues that it was improper for the court to consider this evidence during the revocation phase of his probation violation hearing because it was not the basis for the court's finding that he had violated the terms of his probation. We disagree.

In *State* v. *Davis*, 29 Conn. App. 801, 811, 618 A.2d 557 (1993), rev'd on other grounds, 229 Conn. 285, 641 A.2d 370 (1994), this court stated that, during a probation revocation hearing, a court may consider "the types of information properly considered at an original sentencing hearing because a revocation hearing is merely a reconvention of the original sentencing . . . . The

court may, therefore, consider hearsay information, evidence of crimes for which the defendant was indicted but neither tried nor convicted, evidence of crimes for which the defendant was acquitted, and evidence of indictments or informations that were dismissed." (Citation omitted.) Id. "Punishment must fit the criminal as well as the crime. . . . For the determination of sentences, justice generally requires consideration of more than the particular acts for which the crime was committed and that there be taken into account the circumstances of the offense together with the character and the propensities of the offender. . . . Included as part of this consideration is conduct arising subsequent to the conviction and the underlying crime and prior to final sentencing." (Citations omitted; internal quotation marks omitted.) *State* v. *Garvin,* 43 Conn. App. 142, 151–52, 682 A.2d 562 (1996), aff'd, 242 Conn. 296, 699 A.2d 921 (1997). Therefore, the court acted within its discretion when, during the revocation phase of the defendant's probation violation hearing, it considered evidence of the defendant's arrest for assaulting his pregnant girlfriend.

Moreover, a review of the transcript of the revocation phase of the defendant's probation violation hearing illustrates that the court considered many factors before it revoked the defendant's probation. The court expressly searched the defendant's probation record for, and allowed the defendant an opportunity to present, evidence that his probation was serving him a rehabilitative purpose or that he was not a threat to the public. The court also considered (1) the defendant's history of committing serious crimes, including repeated incidents of assault and selling drugs, (2) his past failed attempts at probation for other crimes, (3) that he had not taken advantage of drug or vocational programs while he was on probation and (4) that while on probation, the defendant had been accused of and arrested for assaulting his pregnant girlfriend.

We conclude that the court properly reviewed the defendant's whole probation record and reasonably exercised its discretion in concluding that the beneficial aspects of the defendant's probation were not being served and in revoking his probation.

The judgment is affirmed.

In this opinion the other judges concurred.