STATE OF CONNECTICUT *v.* MICHAEL JAMES
(AC 29536)

Gruendel, Alvord and West, Js.

Argued January 12—officially released April 13, 2010

*Auden Grogins*, special public defender, for the appellant (defendant).

*Rocco A. Chiarenza*, special deputy assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Dina Urso*, assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Michael James, appeals from the judgments of conviction, rendered following a jury trial, of two counts of sale of narcotics by a

person who is not drug-dependent in violation of General Statutes § 21a-278 (b).[1] He claims that (1) the trial court improperly joined the two cases against him and (2) there was insufficient evidence to convict him under § 21a-278 (b) because he proved by a preponderance of the evidence that he was drug-dependent. We affirm the judgments of the trial court.

The defendant was arrested twice in November, 2006, for selling crack cocaine to the same undercover police officer. The arrests happened as a result of two undercover narcotics operations conducted by the Stamford police department (department). On November 15, 2006, and on November 29, 2006, Detective Michael McKenna was given money from the department's narcotics fund and sent undercover to the south end of Stamford to conduct "buy and bust" operations. On both dates, McKenna was fitted with an electronic listening device that allowed the lead officer, Brian Cronin, to monitor his conversations. McKenna was also visually surveilled by Cronin and several other officers who were positioned in nearby unmarked cars in the event that it became necessary to effectuate an arrest.

At approximately 2:30 p.m. on November 15, 2006, McKenna drove in an unmarked car to the area of Henry and Atlantic Streets where he saw the defendant standing on the side of the road. McKenna nodded to the defendant, who nodded back. McKenna interpreted the defendant's acknowledgement as an invitation to purchase crack cocaine and pulled his car over. The defendant approached McKenna's vehicle and entered it

---

[1] General Statutes § 21a-278 (b) provides in relevant part: "Any person who . . . sells . . . to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance, except as authorized in this chapter, and who is not, at the time of such action, a drug-dependent person, for a first offense shall be imprisoned not less than five years or more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years or more than twenty-five years. . . ."

through the passenger door. McKenna told the defendant that he "only had twenty-nine." The defendant replied that he "had it loose."[2] McKenna put his hand out. The defendant took some crack cocaine from his winter hat and placed it in McKenna's hand. McKenna gave the defendant $29, and the defendant exited the vehicle. McKenna drove away from the scene to a prearranged meeting place where he met Cronin and the other officers involved. Later, McKenna picked the defendant out of a photo array. When the defendant was arrested, $29 was found on his person.

A similar operation took place on November 29, 2006. At approximately 4:45 p.m. on November 29, 2006, McKenna drove in an unmarked car to the same neighborhood in Stamford. He was waved down by a man wearing a Tommy Hilfiger coat. McKenna acknowledged the man and pulled over. The man, a Richard Joyner, now accompanied by the defendant, approached McKenna's car. McKenna told Joyner he "wanted thirty." Joyner replied that he "only had ten." McKenna agreed to buy what Joyner had, and Joyner turned to discuss something with the defendant. The defendant handed some crack cocaine to Joyner, which Joyner then handed to McKenna. McKenna gave Joyner $10. Joyner then started yelling, "give it to me," and leaned into the vehicle to get the rest of McKenna's money. At this point, Joyner and the defendant were taken into custody by the rest of the undercover officers on the scene.

The defendant was initially charged under two separate docket numbers; however, on August 28, 2007, over the defendant's objection, the court granted the state's motion for joinder. In an amended information, the state charged the defendant with one count of sale of

---

[2] Officer Cronin testified that drug dealers often keep crack cocaine "loose" instead of individually packaging it for sale.

narcotics by a person who is not drug-dependent in violation of § 21a-278 (b) and one count of sale of narcotics as a drug-dependent person in violation of § 21a-277 (a) in connection with the incident on November 15, 2006; and one count of sale of narcotics by a person who is not drug-dependent in violation of § 21a-278 (b) and one count of sale of narcotics as a drug-dependent person in violation of § 21a-277 (a) in connection with the incident on November 29, 2006. Following a jury trial, the defendant was convicted of two counts of sale of narcotics by a person who is not drug-dependent in violation of § 21a-278 (b). This appeal followed.

I

The defendant first claims that the court's joinder of Docket No. CR-06-0157646, which related to the incident that occurred on November 15, 2006, and Docket No. CR-06-0157782, which related to the incident that occurred on November 29, 2006, was improper and denied him his right to a fair trial.

"The trial court has discretion to determine whether separate cases involving the same defendant should be consolidated . . . and the exercise of that discretion may not be disturbed on appeal unless it has been manifestly abused. . . . To demonstrate that the trial court abused its discretion, the defendant bears the heavy burden of convincing this court that the joinder resulted in substantial injustice. . . .

"In Connecticut, joinder of cases is favored. . . . Joinder expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries, and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once. . . . In determining whether joinder is appropriate, the court

must consider several factors. The factors to be considered are (1) whether the charges involve discrete, easily distinguished factual scenarios, (2) how long and complex the trial was, and (3) whether one or more of the counts alleges brutal or shocking conduct by the accused. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred from improper joinder." (Citations omitted; internal quotation marks omitted.) *State* v. *Banks*, 59 Conn. App. 112, 122–23, 755 A.2d 951, cert. denied, 254 Conn. 950, 762 A.2d 904 (2000).

The defendant argues that both cases were so factually similar that their joinder necessarily resulted in confusion for the jury and substantial prejudice to him. We are not convinced. "Factual scenarios that are discrete and easily distinguishable involve different locations, times and witnesses. . . . Presentation of the evidence in an orderly sequence contributes to the distinguishability of the factual scenarios in the charges joined for trial. . . . The evidence need not be presented in strictly chronological order, however, as long as the presentation does not confuse the jury and does not prejudice it against the defendant." (Citations omitted.) *State* v. *Rodriguez*, 91 Conn. App. 112, 118–19, 881 A.2d 371, cert. denied, 276 Conn. 909, 886 A.2d 423 (2005).

Although the conduct underlying both cases was similar, the charges against the defendant resulted from two distinct and easily distinguishable incidents that occurred more than one week apart. On November 15, 2006, the defendant acted alone. On November 29, 2006, he acted with Joyner. The evidence presented to the jury was straightforward, and the state was careful to specify whether it was questioning witnesses regarding the events of November 15, 2006, or the events of November 29, 2006. The trial was neither lengthy nor

complex, and the court instructed the jury that each charge was "completely separate" and must be considered "independently of each other" as if it was tried "separately and alone." Therefore, we conclude that the defendant has not demonstrated that the court's ruling caused him substantial prejudice, and the court did not abuse its discretion in joining the cases against him.

II

The defendant next claims that there was insufficient evidence to convict him of sale of narcotics by a person who is not drug-dependent because he proved by a preponderance of the evidence that he was drug-dependent. "To obtain a conviction under § 21a-278 (b), the state must prove that the defendant possessed narcotics with the intent to sell them. . . . [A] person charged with sale of narcotics pursuant to § 21a-278 (b) is presumed not to have been drug-dependent, but may avoid liability under § 21a-278 (b) by proving by a preponderance of the evidence that he was drug-dependent [as defined in General Statutes § 21a-240 (18) and (19)][3] at the time of the offense." (Internal quotation marks omitted.) *State* v. *Alvarado*, 62 Conn. App. 102, 110, 773 A.2d 958, cert. denied, 256 Conn. 907, 772 A.2d 600 (2001). "[T]he absence of drug dependency is not an element of the offense. . . . Rather, [proof of drug dependency provides] an exemption from liability that must be proved by the defendant." (Internal quotation marks omitted.) Id. "Whether a defendant is a drug-dependent person . . . is a question of fact. . . . A

[3] General Statutes § 21a-240 (18) defines "drug dependence" as a "psychoactive substance dependence on drugs as that condition is defined in the most recent edition of the 'Diagnostic and Statistical Manual of Mental Disorders' of the American Psychiatric Association," and § 21a-240 (19) defines "drug-dependent person" as "a person who has a psychoactive substance dependence on drugs as that condition is defined in the most recent edition of the 'Diagnostic and Statistical Manual of Mental Disorders' of the American Psychiatric Association . . . ."

finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record." (Citation omitted; internal quotation marks omitted.) *State* v. *Ray*, 290 Conn. 602, 631, 966 A.2d 148 (2009).

The defendant submitted the testimony of clinical psychologist Linda Liefland to prove his drug dependence. Liefland testified that she had been retained by the defendant's attorney to conduct a drug and alcohol evaluation and concluded that the defendant met the criteria for cocaine dependence. She testified that she based her conclusion primarily on records submitted to her by the defendant's attorney, telephone interviews with the defendant's close relatives, including his mother, wife and sister, and a one hour and fifteen minute interview with the defendant. Liefland admitted that although the defendant had a vested interest in being found drug-dependent, she did not ask the defendant how he was supporting his alleged $200 a day habit or seek to corroborate the defendant's drug use with his doctors. Liefland testified that she interviewed Andrew Williams, a staff member at a halfway house where the defendant was confined in 2004. Williams told Liefland that the defendant's drug use was "off and on" when he knew him in 2004. Liefland acknowledged that she did not question Williams at all about the defendant's behavior during the relevant time period, 2006. Evidence was also introduced through Liefland that the defendant had a history of both negative and positive cocaine tests, including a negative test on November 13, 2006, two days before his arrest in connection with the November 15, 2006 incident.[4] Finally, Liefland acknowledged that she had handled only five to ten similar evaluations and was being paid $140 per hour to testify.

---

[4] Liefland testified that cocaine typically stays in the body for three days.

"The credibility of expert witnesses and the weight to be given to their testimony . . . is determined by the trier of fact." (Internal quotation marks omitted.) *State* v. *Alvarado*, supra, 62 Conn. App. 112. A jury is free to accept or reject expert testimony even if it is uncontradicted. Id., 110. Consequently, the jury was free to credit or discredit Liefland's testimony as it saw fit. In doing so, it reasonably could have found that the defendant was a drug user or abuser[5] but that he did not meet his burden of proving his drug dependency by a preponderance of the evidence.

The judgments are affirmed.

In this opinion the other judges concurred.

---

[5] Liefland testified that the standard for drug abuse is much lower than the standard for drug dependence.